UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

ROAD KING DEVELOPMENT, INC., )
and )
ZEEDEE, LLC, )
 )
      Plaintiffs, )
 )
v. ) Case No.:  2:21-cv-55
 )
FRANCHISE GROUP, INC., )
      Defendant. )
 )

**Serve:**

    **Franchise Group, Inc.**
    **Attn: C T Corporation System, Registered Agent**
    **4701 Cox Road, Ste. 285**
    **Glen Allen, Virginia 23060**

## COMPLAINT

COME NOW the Plaintiffs, Road King Development, Inc. ("Road King"), and ZeeDee, LLC ("ZeeDee"), by counsel, for their Complaint against the Defendant, Franchise Group, Inc. ("Liberty Tax"), and hereby state as follows:

### The Parties

1. Road King is a Texas Corporation with its principal place of business located at 202 Painted Sky, Comfort, Texas 78013.

2. ZeeDee is a Texas Limited Liability Company with its principal place of business located at 202 Painted Sky, Comfort, Texas 78013.  ZeeDee, LLC has two members, Road King Development, Inc. and David Perez.  David Perez is a natural person who resides at 125 S. Lakeview Street, San Benito, Texas 78586 and is a resident of Texas

3. Franchise Group, Inc. d/b/a Liberty Tax is a Delaware corporation with its

headquarters and principal place of business located at 1716 Corporate Landing Parkway, Virginia Beach, Virginia 23454

4. Franchise Group, Inc. is a successor in interest to JTH Tax, Inc. d/b/a Liberty Tax.

## Subject Matter Jurisdiction

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy, excluding interest and costs, exceeds $75,000.

## Personal Jurisdiction

6. Personal jurisdiction over Liberty Tax exists in Virginia because, among other reasons, Liberty Tax is incorporated in Virginia.

## Venue

7. Venue is proper in this Court because, among other reasons, it is a permissible venue under 28 U.S.C. § 1391 as a district in which Liberty Tax is subject to personal jurisdiction.

## Statement of Facts

8. Liberty Tax is in the business of selling franchises engaged in the preparation of tax returns as well as Area Development ("AD") territories that support the franchises within their prescribed geographic boundaries.

9. Road King and ZeeDee are parties to two separate AD agreements with Liberty Tax.

10. Both Road King and ZeeDee are members of the Liberty Tax Area Developers Association, a private organization that exists to help protect the interests of Liberty Tax Area Developers (also, "AD" or "ADs").

11. On or about June 28, 2005, Road King entered into an AD agreement with Liberty Tax to, among other things, develop candidates to become franchise owners and support existing franchise owners in sixteen separate counties in Texas. *See* attached **Exhibit A**.

12. In exchange, Liberty contracted to pay Road King a percentage of franchise fees and franchise royalties received by Liberty Tax from franchises within Road King's designated territory.

13. The payment to the Road King of any royalties, franchise fees, and/or interest collected by Liberty Tax from a franchisee were to be paid to Road King "not later than the last day of the next calendar month."

14. E-filing fees are considered a tax preparation fee and must be included in the calculations when determining royalty payments to ADs.

15. The Road King AD agreement was set to expire on June 28, 2015.

16. On or about November 18, 2014, Liberty Tax agreed to and executed an early Renewal Agreement with Road King. *See* attached **Exhibit B**.

17. Although Paragraph 7.1 of the Renewal Agreement stated that the term of the agreement was six years (i.e., November 18, 2020), an addendum to that agreement titled "Acknowledgement of Early Renewal of Area Developer Agreement," executed by Liberty Tax, changed the term of agreement to ten years. Pursuant to this addendum the Renewal Agreement was set to terminate on November 18, 2024.

18. Road King also owns a majority interest in ZeeDee.

19. On or about January 9, 2015, ZeeDee executed an AD agreement with Liberty Tax to become the owner of another territory in Texas that had previously been owned and operated by Road King. This agreement was set to expire on January 9, 2021. *See* attached **Exhibit C**.

20. In material respects, the ZeeDee AD agreement provided for the same type of contractual relationship with Liberty Tax as the Road King AD agreement discussed above.

21. Both the Road King and ZeeDee AD agreements contain a renewal provision by which the AD can renew those agreements upon written notice at least six months prior to the expiration of the agreement.

22. At all relevant times, the following were well-known general corporate policy and practice at Liberty Tax, as set forth and communicated by Liberty Tax leadership: (1) strict 180-day renewal notices for AD territories were not generally enforced when entities and agreements were in good standing, and (2) though written notice to renew was required by Liberty Tax's agreements, oral notice of territory renewals were generally accepted by Liberty Tax.

23. On or about April 23, 2020, Road King submitted written notice of its intent to renew to Liberty Tax.  A representative of Liberty Tax acknowledged receipt of Road King's notice the same day.  *See* attached **Exhibit D**.

24. Road King never received a renewal AD agreement from Liberty Tax.

25. On or about June 23, 2020, ZeeDee submitted written notice of its intent to renew to Liberty Tax.  A representative of Liberty Tax acknowledged receipt of ZeeDee's notice the following day.  *See* attached **Exhibit E**.

26. On or about June 26, 2020, pursuant to a request by Liberty Tax, ZeeDee submitted an updated and executed receipt of an Area Developer Franchise Disclosure Document ("FDD").  A representative of Liberty Tax acknowledged receipt of ZeeDee's executed FDD the same day.

27. ZeeDee never received a renewal AD agreement from Liberty Tax.

28. On or about November 23, 2020, Road King received correspondence from Liberty Tax's CEO, Brent Turner, stating that Road King had allegedly failed to meet the development

goals set forth in the AD Agreement during the COVID-19 pandemic, and that as a result, Liberty would not be renewing Road King's AD agreement. Further, Liberty terminated Road King's rights to the territories listed in the AD Agreement effective immediately. *See* attached **Exhibit F**.

29. Paragraph 4.1 of the agreement requires Liberty Tax to give Road King notice if it is not meeting the minimum required development goals and provides that Liberty Tax's only remedy for such failure is to remove from the total territory the number of franchise territories that the AD failed to sell. Pursuant to this provision, the notice Liberty Tax is obligated to issue must include a list identifying which franchise territories it has selected to be deleted and should be accompanied by any credit owed to the AD for the prepaid initial fee.

30. Prior to receiving the November 23, 2020 correspondence, Road King never received any notification from Liberty Tax indicating it believed Road King was not meeting the development goals set forth in the agreement.

31. Further, Liberty never identified which franchise territories it alleged were deficient.

32. At some point after Road King and ZeeDee entered into the AD agreements referenced above, Liberty Tax released new uniform agreements (the "Revised AD Agreements") to be entered into by all new ADs that contained materially different terms than those contained within the AD agreements signed by Road King and ZeeDee (as well as other ADs similarly situated).

33. While Liberty Tax initially informed existing ADs that they would be permitted to renew their AD agreements with addendums to the Revised AD Agreements so that the terms

would be the same as their existing AD agreements, Liberty changed course and began requiring all ADs to execute the Revised AD Agreements as-is if they wished to renew.

34. The original AD agreements signed by Road King and ZeeDee contain the following provision under Section 7.1:

> If Area Developer wishes to renew *this Agreement*, Area Developer must notify Liberty in writing at least one hundred and eighty (180) days before the expiration of this Agreement.

(emphasis added).

35. As of 2020, and upon information and belief 2021, Liberty Tax requires all renewing ADs to execute the Revised AD Agreement, and Liberty Tax no longer permits ADs to renew their existing AD agreements.

## COUNT I
## BREACH OF CONTRACT- WRONGFUL TERMINATION OF AGREEMENT
### (*as to Road King*)

36. Plaintiffs repeats and re-allege the foregoing paragraphs as if fully stated herein.

37. Pursuant to the early renewal addendum to Road King's AD agreement, the term of the expiration date was November 18, 2024 not November 18, 2020.

38. As a result, Liberty Tax's action regarding this agreement was a termination action, not a non-renewal action.

39. According to Liberty's November 23, 2020 correspondence, Liberty terminated Road King's AD agreement due to Road King's alleged failure to meet development goals.

40. However, Paragraph 4.1 of the agreement provides that deletion of territories was the "sole remedy" for any alleged failure to meet performance goals.

41. Additionally, pursuant to Paragraph 4.1, Liberty Tax was required to notify Road King of its alleged failure to meet the development goals established in the agreement "within 90

days of the end of the year wherein the requirements were not met." "Year" for purposes of this provision, meant Liberty Tax's fiscal year which ends on April 30.

42. Accordingly, Liberty Tax was contractually obligated to notify Road King of this alleged failure to perform no later than July 30, 2020. However, Liberty Tax provided no notice whatsoever to Road King regarding the development goals.

43. Further, Paragraph 7.3(b) of the agreement gives an exclusive list of causes for which Liberty Tax is permitted to terminate an AD agreement without providing an opportunity to cure. Failure to meet development goals is not listed as a reason for when Liberty Tax is permitted to terminate without giving an opportunity to cure.

44. Paragraph 7.3(c) of the agreement states in relevant part that Liberty Tax may terminate the agreement for the AD's failure to perform any obligation in the agreement provided that the failure to perform continues for thirty days after Liberty Tax's notice of the breach.

45. Liberty Tax also did not provide notice of any other alleged breaches that could form the basis for termination of the agreement.

46. Liberty Tax breached the terms of the Road King AD agreement in at least two ways:

47. First, the AD agreement provides that deletion of territories was the "sole remedy" for any alleged failure to meet performance goals. Liberty Tax breached the AD agreement when it terminated Road King's agreement rather than deleting territories due to Road King's alleged failure to meet development goals.

48. Second, Liberty Tax terminated Road King's agreement without notice or opportunity to cure as required.

49. Road King has been damaged as a direct and proximate result of Liberty Tax's breaches in the amount of the lost future royalties lost due to the wrongful termination.

WHEREFORE, in consideration of the foregoing, the Road King respectfully request the following relief:

1. This Honorable Court enter an Order requiring Specific Performance that Liberty Tax reinstate Road King's AD agreement and pay any royalties and payments that would have been otherwise due to be paid to Road King during the time period where the AD agreement was wrongfully terminated;

2. In the alternative, direct and consequential damages in the amount of $1,535,560; and

3. Such other and further relief as this Court may deem just and proper.

## COUNT II
## BREACH OF CONTRACT- FAILURE TO PAY FRANCHISE ROYALTIES
### (*as to Road King and ZeeDee*)

50. Plaintiffs repeat and re-allege the foregoing paragraphs as if fully stated herein.

51. Paragraph 3.3 of the agreement states that Liberty Tax will pay "an amount equal to 50% of all ongoing royalties received by Liberty, if any, from a Franchisee during the Term."

52. Paragraph 3.10 states that "Liberty will pay Area Developer its share of royalties or franchise fees not later than the last day of the next calendar month."

53. Liberty Tax breached the AD agreements by failing to pay the full share of royalties and fees owed to Plaintiffs, specifically, their portion of the e-filing fees charged by Liberty to the Franchisees, by the deadline stated in paragraph 3.10.

54. The Plaintiffs have been damaged as a direct and proximate result of Liberty Tax's breach in the amount of the franchise royalties not fully and timely paid to them by Liberty.

WHEREFORE, in consideration of the foregoing, the Plaintiffs respectfully request the following relief:

1. Damages in the amount of $200,000, or such other amount as proven at trial; and

2. Such other and further relief as this Court may deem just and proper.

## COUNT III
## BREACH OF CONTRACT- FAILURE TO PROVIDE RENEWAL AGREEMENT UNDER THE SAME TERMS
### (*as to ZeeDee*)

55. Plaintiffs repeat and re-allege the foregoing paragraphs as if fully stated herein.

56. Liberty Tax's actions with regard to the ZeeDee agreement have made it impossible for ZeeDee to renew the agreement, in violation of the terms of the agreement.

57. Paragraph 7.2 of the agreement provides that ZeeDee would have the opportunity to renew the agreement upon written notification to Liberty Tax of the intent to renew at least six months prior to the expiration date.

58. ZeeDee properly notified Liberty of its intent to renew the agreement more than six months prior to the expiration date of January 9, 2021.

59. As of the date of this filing, Liberty Tax is continuing to pay ZeeDee franchise fees and royalties and treat ZeeDee as if it is still an active AD.

60. However, Liberty Tax had failed to present ZeeDee with a proposed renewal agreement for its review and execution.

61. Liberty Tax's failure to provide the renewal agreement has prevented ZeeDee from exercising its right to renew the agreement. This interference with ZeeDee's contractual rights constitutes a breach of the terms of the agreement.

62. Further, Paragraph 7.2 of the agreement entitles ZeeDee to the opportunity to renew the *same* agreement it entered into in 2015.

63. However, Liberty Tax does not presently allow any existing Liberty AD to renew their existing agreements, and instead Liberty Tax requires all existing ADs enter into the materially different terms provided for in the Revised AD Agreements.

64. The Revised AD Agreements contain material changes to the terms and conditions of the agreement, including the following changes:

a) Paragraph 3.3 of the Revised AD Agreements does not specify the percentage of fees or royalties payable to ADs and it should provide for the same 50% compensation as the original AD agreement.  Specifically, the Revised AD Agreement removes the AD's right to receive a 50% royalty payment for Liberty Tax owned stores.  Additionally, the Revised AD Agreements require ADs to provide support to Liberty Tax owned stores, even though they receive no payment of royalties from the Liberty Tax owned stores;

b) Paragraphs 3.15, and 3.16 were added which include the ability for Liberty Tax to deduct amounts owed to Liberty Tax from payments to the AD, without any documentation or support, and the imposition of a $10,000 transfer fee for any transfer of the agreement;

c) Paragraph 4.1 was amended to eliminate compensation for undeveloped territories that Liberty Tax re-acquires from ADs and expands the population of territories subject to re-acquisition, imposes two performance goals and permits Liberty Tax to delete active, revenue-producing franchises if the franchisee doesn't meet the performance goals, and removes the language stating that deletion of territories was the "sole remedy" for failure to meet performance goals;

    d) Paragraph 8.1 was amended to reduce the term of the agreement from ten years to six years; and

    e) Paragraph 8.8(f) was added to impose liability on the ADs for any attorney's fees Liberty Tax incurred in enforcement of the agreement or its successful defense of such an action by the AD.

65. Among other things, under the Revised AD Agreement, ZeeDee would make less profit from its territory than it would under the original agreement.

66. These material changes alter the nature of the AD agreement and, therefore, constitute a breach of Paragraph 7.2's provision for ZeeDee to be able to renew the *same* agreement.

WHEREFORE, in consideration of the foregoing, ZeeDee respectfully requests the following relief:

1. This Honorable Court enter an Order requiring Specific Performance that Liberty present ZeeDee with a new agreement that does not contain materially different terms and allow Road King to renew its AD agreement under the same terms as the original agreement;

2. In the alternative, direct and consequential damages in the amount of $1,000,000.00; and

3. Such other and further relief as this Court may deem just and proper.

## COUNT IV
## DECLARATORY JUDGMENT
## (*as to Road King and ZeeDee*)

67. Plaintiffs repeat and re-allege the foregoing paragraphs as if fully stated herein.

68. The renewal provision of the AD agreement states that the AD may renew "this Agreement."

69. However, Liberty Tax released Revised AD Agreements with materially different terms that are uniformly provided to all ADs as the basis for any renewed agreements.

70. The Revised AD Agreements include the following material changes:

   a) Paragraph 3.3 of the Revised AD Agreements does not specify the percentage of fees or royalties payable to ADs and it should provide for the same 50% compensation as the original AD agreement. Specifically, the Revised AD Agreement removes the AD's right to receive a 50% royalty payment for Liberty Tax owned stores. Additionally, the Revised AD Agreements require ADs to provide support to Liberty Tax owned stores, even though they receive no payment of royalties from the Liberty Tax owned stores;

   b) Paragraphs 3.15, and 3.16 were added which include the ability for Liberty Tax to deduct amounts owed to Liberty Tax from payments to the AD, without any documentation or support, and the imposition of a $10,000 transfer fee for any transfer of the agreement;

   c) Paragraph 4.1 was amended to eliminate compensation for undeveloped territories that Liberty Tax re-acquires from ADs and expands the population of territories subject to re-acquisition, imposes two performance goals and permits Liberty Tax to delete active, revenue-producing franchises if the franchisee doesn't meet the performance goals, and removes the language stating that deletion of territories was the "sole remedy" for failure to meet performance goals;

   d) Paragraph 8.1 was amended to reduce the term of the agreement from ten years to six years; and

   e) Paragraph 8.8(f) was added to impose liability on the ADs for any attorney's fees Liberty Tax incurred in enforcement of the agreement or its successful defense of such an action by the AD.

71. An actual justiciable controversy exists by way of Liberty Tax's breach of its contractual obligation to provide Plaintiffs with the opportunity to renew the same agreements since Liberty Tax now requires all renewing ADs to sign the Revised AD Agreements.

72. Pursuant to 28 U.S.C. § 2201, Plaintiffs are entitled to declaratory judgment that the terms of their original AD agreements provide them the right to renew the same agreements without a material alteration of the terms and conditions.

WHEREFORE, in consideration of the foregoing, the Plaintiffs respectfully request the following relief:

1. An order declaring that original AD agreements entered into by Road King and ZeeDee require Liberty Tax to provide the opportunity for Plaintiffs to renew the *same* agreements, i.e., "this agreement," and not some other materially changed agreements;

2. An order declaring that Revised AD Agreements contain material differences from the original AD agreements entered into by Road King and ZeeDee;

3. An order declaring that the Revised AD Agreements to be provided by Liberty Tax to Road King upon the specific performance referenced above in Count I, and to ZeeDee upon the specific performance referenced above in Count III, must be under

      the same material terms and conditions as the original AD agreements signed by Road King and ZeeDee;

4. An order awarding to the Plaintiffs their costs and expenses incurred as a result of filing this lawsuit; and

5. Such other and further relief as this Court may deem just and proper.

Respectfully Submitted,

**ROAD KING DEVELOPMENT, INC,
and
ZEEDEE, LLC**

By:    /s/ Christopher D. Davis
              Of Counsel

Christopher D. Davis, Esq. (VSB No.: 74809)
Destinee B. Byers, Esq. (VSB No.: 94691)
Erin C. McDaniel, Esq. (VSB No.: 94884)
Davis Law, PLC
555 Belaire Ave., Suite 340
Chesapeake, Virginia 23320
Telephone: (757) 410-2293
Facsimile: (757) 257-8614
chris@davislawplc.com
destinee@davislawplc.com
erin@davislawplc.com
*Counsel for Plaintiffs*