IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**ROAD KING DEVELOPMENT, INC.,** *et al.,*

v.                                                                **CIVIL ACTION NO. 2:21-cv-55**

**JTH TAX LLC d/b/a Liberty Tax Service,**

    **Defendant.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is JTH Tax's ("Defendant") Motion for Disqualification of Plaintiff's counsel. ECF No. 14. Road King Development Inc. and ZeeDee LLC ("Plaintiffs") responded in opposition and Defendant replied. ECF Nos. 19, 21. On May 11, 2021, the Court held a hearing on this matter. This matter is now ripe for judicial determination. For the reasons set forth below, the Motion is **DENIED**.

## I.    FACTUAL AND PROCEDURAL HISTORY

JTH Tax LLC, d/b/a/ Liberty Tax ("Defendant") sells franchises engaged in the preparation of tax returns as well as Area Development ("AD") territories that support the franchises within their prescribed geographic boundaries. ECF No. 6 at ¶ 8. Plaintiffs are parties to two separate AD agreements with Defendant whereby Plaintiffs obtained the exclusive right to sell and support tax preparation franchises for Liberty in counties in Texas. *Id.* at ¶ 9. Plaintiffs owned and operated respective area development territories on behalf of Liberty as area developers ("ADs"), having entered into respective area developer agreements ("AD Agreements") with Liberty. *Id.* ¶¶ 10-11, 19. After retaining Attorney Christopher Davis, who had worked for Liberty Tax, on February 25, 2021, Plaintiffs filed an amended complaint alleging four counts against Defendant. *Id.* Count I allege breach of contract because of wrongful termination of the agreement. *Id.* at ¶¶ 36-49. Count

1

II alleges breach of contract for Defendant's failure to pay franchise royalties. *Id.* at ¶¶ 50-54. Count III alleges breach of contract for failure to provide renewal agreement under the same terms. *Id.* at ¶¶ 55-66. Count IV alleges declaratory judgment. *Id.* at ¶¶ 67-72.

On March 30, 2021, Defendant filed a motion to dismiss Plaintiffs' amended complaint. ECF No. 9. On April 1, 2021, Defendant filed a motion to disqualify counsel for Plaintiffs. ECF No. 14. On April 13, 2021, the Court granted the parties joint motion to stay the motion to dismiss pending the motion to disqualify counsel. ECF Nos. 17, 18. On April 15, 2021, Plaintiffs responded in opposition to the motion to disqualify counsel. On April 21, 2021, Defendants responded. ECF No. 21.

## II. LEGAL STANDARD

### A. Governing Law

As an initial matter, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Road King is a Texas Corporation with its principal place of in Texas. ECF No. 6 at ¶ 1. ZeeDee is a Texas Limited Liability Company with its principal place of business in Texas *Id.* at ¶ 2. Liberty Tax is a Delaware Limited Liability Company with its headquarters and principal place of business located at Virginia Beach, Virginia. *Id.* at ¶ 3. The amount in controversy exceeds $75,000. *Id.* at ¶ 5. In a diversity action, district courts apply federal procedural law and state substantive law. *See Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996). Federal courts sitting in diversity jurisdiction apply the choice of law rules in the state in which it sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (noting that forum state's choice of law rules is substantive).

Accordingly, Virginia law governs the instant motion to disqualify counsel. *See Atasi Corp. v. Seagate Tech.*, 847 F.2d 826, 829 (Fed. Cir. 1988) (applying regional circuit law to the issue of

attorney disqualification); *see also In re Morrissey*, 305 F.3d 211, 22 (4th Cir. 2002) (attorneys practicing in the Eastern District of Virginia are subject to Virginia's standards for ethical conduct). Furthermore, the ethical standard for the practice of law in civil cases in the Eastern District of Virginia is the Virginia Rules of Professional Conduct. *See* Local Civil Rule 83.1(I); *see also, Sanford v. Commonwealth of Virginia*, 687 F. Supp. 2d 591, 601 (E.D. Va. 2009).

### B. Virginia Rules of Professional Conduct

There are two competing principles. On the one hand, a party should have the right to retain counsel of his choice. On the other hand, a party has the right to have his confidences preserved by his counsel both during and after the representation. *In re Gordon Properties, LLC*, 505 B.R. 703, 706 (Bankr. E.D. Va. 2013). A client is entitled to his or her lawyer's considered advice. To give full and fair advice, a lawyer needs her client to discuss the matter fully and freely with her to give her all the information that the client possesses. Without complete information, a lawyer cannot fully and properly evaluate a client's situation and offer competent advice. A client will be reluctant to fully discuss her case with her lawyer if she thinks that the information may be divulged to others or used against him later. Rules 1.6(a) and 1.9(c) of the Virginia Rules of Professional Conduct govern a lawyer' use of clients' confidential information.

The Virginia Rules of Professional Conduct provide three types of confidential information: privileged communication, secret information, and information relating to or gained by the lawyer during her representation of her current or former client. A client secret is "information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client, whatever its source." Rule 1.6, Comment 3. All other information obtained by a lawyer while representing a client is case-related information. A lawyer may not disclose privileged or secret information and

3

may not use case-related information to the disadvantage of her current or past client unless it has become "generally known." Rule 1.9(c)(1). In all, the confidentiality rules assure the client that he or she "can confide in his lawyer without fear that his lawyer will divulge that information to others or use it to the client's disadvantage. *In re Gordon* at 707.

Most relevant to the instant matter, Rule 1.9(a) states that a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless both the present and former client consent after consultation." Rule 1.9(b) similarly states that "lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client: (1) whose interests are materially adverse to that person; and (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless both the present and former client consent after consultation."

The rules of confidentiality limit a lawyer's ability to represent a new client in matters involving a former client. Critically, when confidentiality conflicts with the right to choose counsel, confidentiality prevails. *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F.Supp. 724, 729 (E.D.Va. 1990) ("the right ... to retain counsel of his choosing is 'secondary in importance to the Court's duty to maintain the highest ethical standards of professional conduct to insure and preserve trust in the integrity of the bar.'"). The confidentiality rules protect both the former client from the obvious threats of divulging confidential information or using it to the former client's disadvantage, and the new client from the lawyer's inability or hesitancy to develop favorable information because of the lawyer's duty to protect the former client's confidential information. *Id.* at 728.

4

"[O]nce an attorney-client relationship has been established, an irrebuttable presumption arises that confidential information was conveyed to the attorney in the prior matter." *Tessier*, 731 F.Supp. at 734. This does not mean that a lawyer is forever barred from representing a new client against a former client. Rule 1.9(a) addresses this. A lawyer *may* represent a new client against a former client, so long as it is not "in the same or a substantially related matter" in which the lawyer represented a prior client. Rule 1.9. The determination of whether a new matter is substantially related to the prior matter is not always easily resolved as is illustrated by *Tessier*.

In resolving the representational issues, *Tessier* examined the prior and the present representations of the law firm. The court paid particular attention to the issues involved, the relation of the issues in the two cases, the facts in both cases, the time frames covered in each case, the causes of action, the legal theories and the parties involved. *Id.* at 730–731. It was not necessary for each factor to be identical in both cases for the two cases to be substantially related. *Id.* at 730. Most critically, with respect to the legal theory involved in both cases the *Tessier* Court stated that

> While the legal theories employed in both cases are substantially different, the cases do arise from substantially similar facts. Confidential information conveyed in one case does not lose its confidential character because it was not utilized to develop a legal theory in a subsequent case. The information remains protected whether it is so used or not.

*Id.* at 731. Furthermore, with respect to determining a substantial relationship, the commentary to Rule 1.9 instructs that "a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client," nor could "a lawyer who has prosecuted an accused person [ ] properly represent the accused in a subsequent civil action against the government concerning the same transaction." VRPC Rule 1.9 n. 1. Other commentary suggests that a lawyer's degree of involvement in the prior representation bears upon the substantiality of the relationship. *See id.* n. 2 ("The underlying question is whether the lawyer was so involved in the

5

matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.").

## C. Evaluating Conflicts of Interest

The disqualification of a party's chosen counsel is a serious matter which cannot be based on imagined scenarios of conflict. *See Richmond Hilton Associates v. City of Richmond,* 690 F.2d 1086, 1089 (4th Cir.1982) ("actual or likely" conflict of interest required); *Aetna Casualty & Surety Co. v. United States,* 570 F.2d 1197, at 1200 (4th Cir.), *cert. denied,* 439 U.S. 821, (1978) (where "practical considerations" eliminated any possibility of conflict, district court's hypothesis based on conjecture will not support granting motion to disqualify counsel); *Shaffer v. Farm Fresh, Inc.,* 966 F.2d 142, at 145 (4th Cir.1992) (observing that "disqualification ... may not be rested on mere speculation" about a conflict of interest). Rather, there must be an "actual conflict of interest" or a "likely" conflict. *Richmond Hilton,* 690 F.2d at 1089. Because a motion seeking to disqualify counsel can be used improperly "for purely strategic purposes," the moving party "bears a 'high standard of proof.'" *Tessier,* 731 F.Supp. at 729 (quoting *Government of India v. Cook Industries Inc.,* 569 F.2d 737, 739 (2d Cir.1978)). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has directed that ethical rules are not to be applied "with hair-splitting nicety," but, rather, "with the view of preventing 'the appearance of impropriety.'" *Sanford v. Virginia,* 687 F.Supp.2d 591, 602 (E.D. Va.2009) (quoting *United States v. Clarkson,* 567 F.2d 270, 273 n. 3 (4th Cir. 1977)).

Accordingly, when faced with a motion seeking disqualification of a retained attorney, a district court must balance the interests of the public and of the legal profession against "'the fundamental principle that a party ought to be represented by its counsel of choice if that is at all possible.'" *Ford Motor Co. v. National Indem. Co.,* No. 3:12cv839, 2013 WL 4498698, at *4

(E.D.Va. Aug. 21, 2013) (quoting *Personalized Mass Media,* 899 F.Supp. at 242); *United States v. Perry*, 30 F. Supp. 3d 514, 533 (E.D. Va. 2014). Thus, "[the Court] is to resolve all doubts in favor of disqualification." *Id.*; *see also, Sunbeam Prod., Inc. v. Hamilton Beach Brands, Inc.*, 727 F. Supp. 2d 469, 472 (E.D. Va. 2010).

If a court finds that an actual or serious potential conflict of interest exist, this will overcome a party's right to counsel of choice, even where the represented party has knowingly waived the conflict. *Id.*; *United States v. Urutyan*, 564 F.3d 679, 686 (4th Cir. 2009). "When the risk of a conflict of interest is brought to the attention of the trial court, [] the court has the responsibility to investigate further, advise the [party] personally, and to receive a knowing waiver if that is the expressed wish of the [party]." *United States v. Tatum*, 943 F.2d 370, 379–80 (4th Cir. 1991). In investigating further, the court must inquire into the facts and details of the attorney's interests to determine whether the attorney suffers from an actual conflict, potential conflict, or no conflict at all. *United States v. Rogers*, 209 F.3d 139, 143 (2nd Cir. 2000) (citation omitted).

In evaluating conflicts, the Court understands that "[t]he likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict." *Wheat v. United States,* 486 U.S. 153, at 162 (1988). As a result, district courts "must be allowed substantial latitude in refusing waivers of conflict of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 163. While there is a presumption in favor of a party's counsel of choice this "'presumption may be overcome not only by a demonstration of actual conflict but by a showing of a *serious potential for conflict.*'" *United States v. Basham,* 561 F.3d 302, 323 (4th Cir.2009) (citing *Wheat* at 164) (emphasis in original). "The evaluation of the facts and circumstances of each case under this standard must be left

7

primarily to the informed judgment of the trial court." *Wheat* at 164. The court has an "independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160. To determine whether there exists a conflict of interest with counsel, this Court relies on case law to determine which circumstances have presented serious potential conflicts. *See Rogers v. Pittston Co.,* 800 F.Supp. 350, 353 (W.D.Va. 1992) (Disqualification questions are necessarily case-specific and fact-intensive, and reject the "'mechanical' application of disciplinary rules, [ ] instead seek[ing] analysis of the harm to the actual parties before the court."

### III. DISCUSSION

To bring a Motion to Disqualify Counsel for violating Rule 1.9 of the Virginia Rules of Professional Conduct, the moving party bears the high burden of satisfying four criteria: (1) the moving party and opposing counsel had a prior attorney-client relationship; (2) the interests of the opposing counsel's present client are adverse to the movant; (3) the matters involved in the present underlying lawsuit are substantially related to the matters for which the opposing counsel previously represented the moving party; and (4) the moving party does not consent. *Touchcom, Inc. v. Bereskin & Parr*, 299 Fed. Appx. 954 (Fed. Cir. 2008). Although the Court has broad discretion to determine whether there is a serious or potential conflict of interest, the Court must make a case-by-case determination based on specific facts offered by the moving party.

### A. Undisputed Elements

In the instant matter the first, second, and fourth it is undisputed that the elements are met. That is, there is no dispute that Liberty Tax and Attorney Davis had a prior attorney-client relationship. *See* ECF Nos. 14, 19, 21. Furthermore, there is no dispute that the interests of Attorney Davis's present client, Road King and ZeeDee, are adverse to Attorney Davis' prior client, Liberty, in this

8

action. Finally, there is no dispute that Attorney Davis' prior client, Liberty, does not consent to Attorney Davis' representation of Road King and ZeeDee in the instant matter. *Id.*

## B. The Matters are Not Substantially Related

Accordingly, the key question for the Court is whether the matters involved in the present underlying lawsuit is substantially related to the matters for which the opposing counsel previously represented the moving party?

1. <u>The Substantially Related Test</u>

The "substantially related" test has two prongs, which the moving party must establish: (1) that an attorney-client relationship existed between the alleged former client, and (2) that the former representation and the current controversy are substantially related. *Tessier* at 730 (citing *Allegaert v. Perot*, 565 F.2d 246, 250 (2d Cir.1977) ("before the substantial relationship test is even implicated, it must be shown that the attorney was in a position where he could have received information which his former client might reasonable have assumed the attorney would withhold from his present client."); *In re Chantilly Construction Corp.*, 39 B.R. 466, 469 (Bankr.E.D.Va. 1984)); *Audio MPEG, Inc. v. Dell, Inc.*, 219 F. Supp. 3d 563, at 570 (E.D. Va. 2016); *Sunbeam Prods., Inc. v. Hamilton Beach Brands, Inc.*, 727 F. Supp. 2d 469, 472 (E.D. Va. 2010); *Neuharth v. Quinn*, 23 Va. Cir. 252, at *5 (Loudoun Cnty. 1991). "Substantially related" has been defined to be "identical" or "essentially the same." *Gov't of India v. Cook Indus., Inc.*, 569 F.2d 737, 740 (2d Cir. 1978); *In re Stokes*, 156 B.R. 181, 187 (Bankr. E.D. Va. 1993); *Rogers v. Pittston Co.*, 800 F.Supp. 350, 353 (W.D.Va.1992); *Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.* 501 F.Supp. 326, 328–29 (D.D.C. 1980). The substantial relationship test requires a "virtual congruence of issues", and the relationship between issues in the prior and present case must be "patently clear." *United States Football League v. National Football League*, 605 F.Supp. 1448,

9

1457 (S.D.N.Y.1985); *see also, In re Chantilly Constr. Corp. v. John Driggs Co., Inc.* 39 B.R. 466, 472 (Bankr. E.D. Va. 1984). The purpose of the "substantial relationship" test is to prevent an attorney from appearing against former client whenever there is reasonable probability that confidences were disclosed in prior representation which could be used against former client in subsequent litigation. *In re Stokes*, 156 B.R. 181 (Bankr. E.D. Va. 1993); *Tessier*, 350 F.Supp. at 730 (describing a scenario where "the lawyer could have obtained confidential information in the first representation that would have been relevant in the second.") (quoting *Analytica Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1266 (7th Cir.1983)); *see also, M-Cam, Inc. v. D'Agostino*, No. 3:05 CV 00006, 2005 WL 2010166, at *1 (W.D. Va. Aug. 22, 2005).

In evaluating both prongs, the *Tessier* court examined the following non-exhaustive list of factors: the issues involved; the relation of the issues and the facts involved in the attorney's respective representation of the clients; the time frames covered in each case; the causes of action; the legal theories; and the parties involved. *Id.* at 730-31. Critically, it is not necessary for each factor to be identical for an attorney's representation to be deemed substantially related to disqualify him as counsel; rather, a court must take a holistic view when considering such factors. *Id.* at 730.

In *Sunbeam Products, Inc*, the Court held that "the [substantial relationship] test encompasses more than situations in which the issues [in successive representations] are indistinguishable; [rather,] 'if the lawyers could have obtained information in the first representation that would have been relevant in the second,' then the matters are considered substantially related. *Sunbeam Prods., Inc.* 727 F. Supp. 2d at 473 (internal citations omitted) (citing *Tessier*, 731 F. Supp. at 730) (emphasis added). Furthermore, the Court found that a substantial relationship had been "clearly shown" between prior and successive representations where a patent attorney—now at the

10

plaintiff's counsel's firm—previously served as former counsel for one of the defendants, and where the attorney, while serving as counsel for that defendant: was involved in patent prosecution work for the subsequently accused product; examined defendant's products "to determine scope of coverage"; analyzed prior art for the application that he drafted for that subsequently accused product; performed a non-infringement analysis as part of the process; and formerly had unrestricted access to defendant's files at his former law firm. 727 F. Supp. 2d at 475.

2. Application of the Matters in Dispute

In the instant matter, Defendant argues that Attorney Davis was privy to confidences regarding Liberty's AD Agreements. ECF No. 15 at 14. Defendant argues that Attorney Davis reviewed Liberty's form AD Agreements like the kind of agreements at issue in Plaintiffs' Amended Complaint. Moreover, Defendant argues that Attorney Davis interpreted similar contractual provisions to garner help from ADs in asserting claims against franchisees, to defend against claims against Liberty, and to mitigate potential conflict with Liberty's interest. *Id.* Further, Defendant argues that Attorney Davis was also privy to internal discussions with, and documents prepared by, his former legal colleagues at Liberty that concerned AD Agreements and litigation involving or against ADs. *Id.*

Defendant argues that during his six-year tenure as Liberty's counsel, Attorney Davis:

> [O]btained tactical intelligence regarding, *inter alia*, Liberty's business and litigation practices with respect to AD obligations; Liberty's policies, practices, and strategies in enforcing franchisee and AD obligations; Liberty's policies, practices, and strategies in defending against litigation; Liberty's drafts and updates to AD Agreements; Liberty's Federal Trade Commission Rule obligations; Liberty's contract negotiations and interpretations of contractual provisions; and Liberty's interpretation of the royalties provision of franchise agreements and therefore the amount to which ADs are entitled.

ECF No. 15 at 14. In support, Defendants provided the declaration of Kathleen Curry, who has served as corporate counsel for Liberty Tax since July 1997. *Id.* at Exhibit 1. Based on Ms. Curry's

11

recollection and Liberty's records, Attorney Davis was privy to "confidential corporate information, policies, procedures, strategies, and legal positions. He advised Liberty's legal teams and Liberty on legal issues and Liberty's legal position in threatened and active lawsuits with current and former franchisees, area developers, employees, and third parties." *Id.* at ¶ 4. Furthermore, Ms. Curry states that Attorney Davis was "in communication with area developers in relation to franchisees in their territories to: prepare declarations in support of lawsuits against those franchisees; attempt to negotiate pre-suit resolution of those disputes; and, response to legal issues that arose between the area developer and the franchisees in their territories." *Id.* at ¶ 6. Ms. Curry further states that Attorney Davis was privy to "Liberty's confidences in taking a position on area developers' obligation under their respective AD Agreements. For instance, he defended Liberty and area developers who had been sued by franchisees for alleged misrepresentations in the sales process." *Id.* at ¶ 7. Attorney Davis also "would have knowledge of Liberty's position, policies, and practices regarding what constitutes royalties under its franchise agreements." *Id.* at ¶ 9. Finally, Ms. Curry states that Attorney Davis' "legal representation of Liberty afforded him access to a wide range of confidential and privileged information, to include internal company policies and procedures, which informed Liberty's litigation and settlement." *Id.* at ¶ 10.

With respect to the *Tessier* factors, Defendant argues that Attorney Davis obtained confidential information during his six-year tenure as Liberty's in-house and that such information is directly informing his legal strategy for the case at bar. Specifically, Defendant argues that Attorney Davis "not only litigated against these franchisees, the area developers, but now he is representing them, and [Attorney Davis is] using… the information that he obtained and knew from litigating against franchisees, litigating against ADs, litigating on behalf of ADs at Liberty Tax when…they were sued by franchisees, to now represent these Ads adverse to Liberty Tax." ECF No. 30 at Tr. 7:1-

9. In essence, Defendant contends that Attorney Davis was privy to Liberty's litigation docket which involved AD agreement disputes and issues about paying royalties to franchisees, and that Attorney Davis worked closely with a team of about six attorneys. *Id.* at Tr. 8:4-9.

In response, Plaintiffs first argue that Defendant has not satisfied its high burden of showing a conflict of interest because Liberty only vaguely stated that Attorney Davis was privy to Liberty Tax's "position under its agreements", and "privy to Liberty's confidences in taking a position on ADs' obligations under their AD Agreements." ECF No. 19. Critically, Plaintiffs rebut Ms. Curry's declaration by arguing that Attorney Davis' litigation work involved lawsuits between Liberty and former franchisees regarding post-termination claims and duties, and enforcement of non-competition and non-solicitation provisions in franchise agreements, none of which are the subject of the instant case or substantially related to this case. *Id.* at 9. Second, Plaintiffs argue that the waivers alleged in the complaint also occurred seven years after Attorney Davis left and that the dispute about inclusion of e-file fees as part of revenue subject to royalties was not even an issue at Liberty Tax until 2019, seven years after Davis left Liberty Tax' employ. *Id.* Accordingly, Plaintiffs argue that the instant matter involves substantially different matters than those that Attorney Davis was privy to when he was in-house counsel for Liberty. Specifically, Plaintiffs allege that the instant matter involves Liberty Tax termination or failure to renew the AD agreement, which Attorney Davis did not oversee as in-house counsel. *Id.; see also,* ECF No. 6 at ¶¶ 29- 31. Moreover, Plaintiffs argue that although Attorney Davis represented Liberty against franchisees to collect unpaid accounts receivable and negotiated settlement agreements with franchisees, this work is not at all related to the current litigation which does not include franchisees, or the collection of Liberty Tax's unpaid accounts receivable. *Id.*

The Court finds that Defendant has not satisfied its high burden of showing a patently clear and substantial relationship between the issues in the instant litigation and those that Attorney Davis' represented Liberty on as in-house counsel. In making this determination, the Court first narrowed the issues that could be substantially related to the instant matter. The issues involved in the instant litigation are breach of Area Development Agreements; waiver of an area developer's 180 notice of renewal requirement; a dispute regarding whether "e-file fees" should be included within royalties to be paid to an area developer; whether an area developer should be allowed to renew the same area developer agreement or whether the area developer would be required to enter into a materially different agreement upon renewal. ECF Nos. 9, 16. However, Defendant only argued that Attorney Davis has confidential information about how Liberty can proceed without paying area developers; "termination issues, such as how can different states' laws affect the termination of the area developers"; Liberty's strategy in dealing with various states' laws; Liberty's arguments in opposing litigation brought by an Area Developer; and the strategic discussions, memoranda, and e-mails that contain information about whether "Liberty was going to actually litigate these issues…." ECF No. 30 at Tr. 8:19-9:24; *see also, id.* at Tr. 10:2-17. In all, Defendant's counsel summarized for the Court that there are two only issues that are substantially similar to the present litigation: (1) termination of ADs and (2) "how Liberty can hold onto revenue form Area Developers based on the area developer agreements." *Id.* at Tr. 12:15-19. With respect to these litigation issues, Defendant argues that Attorney Davis participated in deposing Area developers regarding termination and general litigation matters involving franchisees within their territories. *Id.* at Tr. 12:20-13:16. Nevertheless, even Defendant conceded that the issues that do not have a substantial relationship to the instant matter are: (1) termination within 180 days; (2) e-file fees and royalty calculations; both of which were not issues that existed during Attorney Davis'

time as Liberty's in-house counsel. *Id.* at Tr. 15:7-16:3. Ultimately, Defendant argued that Attorney Davis is privy to confidential information regarding "termination of not just franchisees, but of ADs and what happens when ADs are terminated…; how is Liberty going to argue against what position [plaintiff] is going to take with regard to whether the Franchise Practices Act Applies," as well as how is Liberty going to terminate and why is Liberty going to terminate." *Id.* at 16:20-17:3.

With respect to the two relevant issues that Defendant cites as grounds for disqualification, the Court finds Defendant did not provide sufficient evidence showing a patently clear connection between the confidential information Attorney Davis obtained during his tenure as in-house counsel for Liberty and the issues at bar.

First, the evidence shows that the disputes of the instant case occurred seven years after Attorney Davis left as Liberty's counsel. ECF No. 19 at Exhibit 1; *see also,* ECF No. 6. Critically, Plaintiffs were neither an opposing party nor a franchisee at the time that Attorney Davis worked as Liberty's in-house counsel and the specific agreements in issue at bar were neither entered nor drafted at the time. ECF No. 30 at Tr. 22:22-23:19. Although Attorney Davis may have been privy to specific AD agreements, their termination, and Liberty's general litigation strategy regarding AD terminations, these issues are not substantially related to the specific agreements at bar.

Second, as Defendant acknowledged, the issues involved in the instant litigation including termination within 180 days and e-file fees and royalty calculations are not involved in the instant dispute. *Id.* at Tr. 15:7-16:3. Thus, the only issues that may be substantially related is Attorney Davis' knowledge about Liberty's AD agreements, their termination, and Liberty's general litigation strategy regarding AD terminations or nonrenewal as it relates to application of state law. *Id.* at Tr. 21:21-22:9. However, the Court finds that an attorney's ability to determine how state

law and case precedent will apply to a dispute over AD agreements does not impute privileged communication, secret information, and information the lawyer gained during his representation of his former client. That is, Attorney Davis' knowledge of how to apply the appropriate state law to the contractual dispute is neither privileged nor confidential client information. Moreover, although Attorney Davis' may have knowledge of Liberty's litigation approach to disputes over AD agreements and termination, any such knowledge would be of little help because the instant matter is strictly a dispute of contractual interpretation governed by state law. The Court acknowledges that although the legal memorandum that Attorney Davis drafted on behalf of Liberty, about the application of state law to specific contractual disputes with AD and franchisees, is confidential and privileged client information, the skills of legal research and applying relevant state law to a particular dispute regarding AD termination agreement is not confidential.

Third, Plaintiffs submitted declarations showing that Attorney Davis was siloed from the kind of disputes at bar and, thus, not privy to confidential information particularly on point in this case. Specifically, according to Attorney Davis' declaration, he never reported to Ms. Curry, rather, he reported directly to attorney Carl Khalil (until February 29, 2012), Liberty's senior attorney at the time, and, later to Mr. Wheaton, until December 4, 2013. ECF No. 19 at Exhibit 2 at ¶¶ 2-8. Further, Attorney Davis states that he did not draft nor negotiate area developer agreements, but, rather "worked solely in the litigation department, and [he] handled litigation matters, mostly lawsuits with former Liberty franchisees litigating post-termination duties, such as the effects of non-competition and non-solicitation agreements and venue transfer issues." *Id.* at ¶¶ 10-14. While "the mere fact that a lawyer represented a person who is now the adverse party in a suit brought by the lawyer on behalf of another client is not sufficient to warrant disqualification of the lawyer on ethical grounds, a violation of DR 4-101(B) might result if the lawyer possessed confidential

information obtained from the first client." Va. Legal Ethics Opinion 441, DR 5- 105(C) and (D). In support of Plaintiff's argument, Mr. Wheaton states that Attorney Davis reported directly to him and worked on litigation matters with former Liberty franchisees in litigation regarding post-termination claims and duties, such as the effect of non-competition and non-solicitation. *Id.* at ¶ 8. Mr. Wheaton also states that during his time at Liberty and before Attorney Davis came under his direct supervision, "the roles of attorneys at Liberty Tax supervised by Mr. Khalil were segregated such that attorneys who handled litigation were functionally separate from those handling franchise law compliance, which was coordinated by a junior attorney named Vanessa Szajnoga, who exclusively handled, among other things, franchise compliance and the preparation and closing of franchise and area developer agreements." *Id.* at ¶ 6. Finally, Mr. Wheaton states that during his time at Liberty, Attorney Davis "did interact with area developers for litigation matters involving franchisees, including participating in depositions, and assist with providing regular "litigation updates" that comprised a summary of pending litigation for Liberty's management." *Id.* at ¶ 12. However, during Mr. Wheaton's time at Liberty, Attorney Davis did not handle any disputes involved at bar. *Id.*

Overall, the Court finds that the confidential information Attorney Davis obtained during his six-year tenure at Liberty, regarding AD agreements and Liberty's approach to termination, is not sufficient to merit disqualification because it is not substantially related to the disputes in the instant litigation. Unlike other cases where counsel has used such confidential information directly against a previous client, the Court here does not find that Attorney Davis is using such confidential information against Liberty. *See, e.g. Arriba Corp. v. Bostic*, 69 Va. Cir. 505, at *6 (Norfolk City 2002) (finding an expectation of confidentiality where an attorney's four-year representation of a former client provided him insight into personal and business matters about that former client,

including opinions and assessments of the plaintiffs' claims against that former client, and holding that the use of such information against him would certainly be detrimental). Rather, the record shows that Attorney Davis' representation of Plaintiffs is based solely on the application of state law to a contractual dispute which includes issues that Attorney Davis does not have confidential information about regarding Liberty's position.

## IV. CONCLUSION

Accordingly, after conducting further inquiry, the Court does not find actual or serious potential conflicts to warrant Attorney Davis' disqualification. Therefore, the Defendant's Motion to Disqualify Counsel, ECF No. 14, is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to counsel for the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
May 18, 2021

UNITED STATES DISTRICT JUDGE