

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ROAD KING DEVELOPMENT, INC.,
and ZEEDEE, LLC,

    Plaintiffs,

v.                                                    CIVIL ACTION No. 2:21-cv-55

JTH TAX, LLC d/b/a LIBERTY TAX
SERVICE,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion to Dismiss the Amended Complaint ("Motion to Dismiss"), pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 12(b)(6), filed by Defendant JTH Tax, LLC, d/b/a Liberty Tax Service ("Defendant" or "Liberty"). Def.'s Mot. Dismiss, ECF No. 9. The Court has considered the memoranda of the parties and this matter is now ripe for determination. *See* Def.'s Mem. Supp. Dismiss, ECF No. 10 ("Def.'s Mem. Supp."); Pls.' Mem. Opp. to Def.'s Mot. Dismiss, ECF No. 36 ("Pls.' Mem. Opp."); and Def.'s Reply to Pls.' Mem. Opp. to Def.'s Mot. Dismiss, ECF No. 37 ("Def.'s Reply"). Upon review, the Court finds that a hearing on this Motion is not necessary. For the reasons stated herein, Defendant's Motion to Dismiss is **DENIED**.

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiffs Road King Development, Inc. ("Road King") and ZeeDee, LLC ("ZeeDee") (collectively, "Plaintiffs") filed a Complaint on January 28, 2021. Compl., ECF No. 1. Plaintiffs filed an Amended Complaint on February 25, 2021. Am. Compl., ECF No. 6. Relevant to Defendant's Motion to Dismiss and stated in the light most favorable to Plaintiffs, the following

1

facts are drawn from the Amended Complaint and attachments thereto. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

Road King is a Texas corporation with its principal place of business in Comfort, Texas. Am. Compl. ¶ 1. ZeeDee is a Texas limited liability company with its principal place of business in Comfort, Texas. *Id.* at ¶ 2. Road King owns a majority interest in ZeeDee. *Id.* at ¶ 18. ZeeDee has two members: Road King and David Perez. *Id.* at ¶ 2. David Perez is a natural person who is a resident of Texas. *Id.* Defendant is a Delaware limited liability company with its headquarters and principal place of business in Virginia Beach, Virginia. *Id.* at ¶ 3. Liberty was formerly known as JTH Tax, Inc. d/b/a Liberty Tax Service. *Id.* at ¶ 4. Defendant is in the business of selling franchises engaged in the preparation of tax returns as well as Area Development ("AD") territories that support the franchises within their prescribed geographic boundaries. *Id.* at ¶ 8. Plaintiffs are parties to two separate AD Agreements with Liberty. *Id.* at ¶ 9.

### A. Road King's AD Agreement

On or about June 28, 2005, Road King entered into an AD Agreement with Defendant to, among other things, develop candidates to become franchise owners and support existing franchise owners in sixteen separate counties in Texas. *Id.* at ¶ 11, Ex. A. In exchange, Defendant contracted to pay Road King a percentage of the franchise fees and franchise royalties Defendant received from franchises within Road King's designated territory. *Id.* at ¶ 12. The payment of any royalties, franchise fees, and/or interest that Defendant collected from a franchisee were to be paid to Road King "not later than the last day of the next calendar month." *Id.* at ¶ 13. Road King alleges that e-filing fees are considered tax preparation fees and must be included in the calculations when determining royalty payments to ADs. *Id.* at ¶ 14. Road King's AD Agreement was set to expire on June 28, 2015. *Id.* at ¶ 15.

On or about November 18, 2014, Defendant agreed to and executed an Early Renewal Agreement with Road King. *Id.* at ¶ 16, Ex. B. Paragraph 7.1 of the Renewal Agreement stated that the term of the Agreement was six years. *Id.* at ¶ 17. However, an addendum to that Agreement that Liberty executed, titled "Acknowledgement of Early Renewal of Area Developer Agreement," changed the term of the Agreement to ten years. *Id.* Pursuant to this addendum, the Renewal Agreement was set to terminate on November 18, 2024. *Id.*

On or about April 23, 2020, Road King submitted written notice of its intent to renew to Defendant. *Id.* at ¶ 23. A Liberty representative acknowledged receipt of Road King's notice, but Road King never received a Renewal AD Agreement. *Id.* at ¶¶ 23-24. On or about November 23, 2020, Road King received correspondence from Liberty's CEO, Brent Turner, stating that Road King had allegedly failed to meet the development goals set forth in the AD Agreement during the COVID-19 pandemic, and that, as a result, Defendant would not be renewing Road King's AD Agreement. *Id.* at ¶ 28. Defendant also terminated Road King's rights to the territories listed in the AD Agreement effective immediately. *Id.* at ¶ 28, Ex. F. Prior to receiving this correspondence, Road King never received any notification from Defendant indicating it believed Road King was not meeting the development goals set forth in the Agreement. *Id.* at ¶ 30. Further, Defendant never identified which franchise territories it alleged were deficient. *Id.* at ¶ 31.

**B. ZeeDee's AD Agreement**

On or about January 9, 2015, ZeeDee executed an AD Agreement with Defendant to become the owner of another territory in Texas that Road King previously owned and operated. *Id.* at ¶ 19. This Agreement was set to expire on January 9, 2021. *Id.* at ¶ 19, Ex. C. In material respects, ZeeDee's AD Agreement provided for the same type of contractual relationship with Defendant as the Road King AD Agreement. *Id.* at ¶ 20.

3

On or about June 23, 2020, ZeeDee submitted written notice of its intent to renew to Defendant. *Id.* at ¶ 25. A Liberty representative acknowledged receipt of ZeeDee's notice the following day. *Id.* at ¶ 25, Ex. E. On or about June 26, 2020, pursuant to Defendant's request, ZeeDee submitted an updated and executed receipt of an Area Developer Franchise Disclosure Document ("FDD"). *Id.* at ¶ 26. A Liberty representative acknowledged receipt of ZeeDee's executed FDD, but ZeeDee never received a Renewal AD Agreement. *Id.* at ¶¶ 26-27.

### C. Defendant's Revised AD Agreements

At some point after Plaintiffs entered into the aforementioned AD Agreements, Defendant released new uniform Agreements (the "Revised AD Agreements"), to be entered into by all new ADs, that contained materially different terms than those contained within the AD Agreements that Plaintiffs signed. *Id.* at ¶ 32. While Defendant initially informed existing ADs that they would be permitted to renew their AD Agreements with addendums to the Revised AD Agreements so that the terms would be the same as their existing AD Agreements, Defendant began requiring all ADs to execute the Revised AD Agreements as-is if they wished to renew. *Id.* at ¶ 33.

Plaintiffs accuse Defendant of breaching its contract with them in several respects. Specifically, Plaintiffs asserts four Counts against Defendant:

Count 1.  Breach of Contract – Wrongful Termination of Agreement (*Id.* at ¶¶ 36-49)

Count 2.  Breach of Contract – Failure to Pay Franchise Royalties (*Id.* at ¶¶ 50-54)

Count 3.  Breach of Contract – Failure to Provide Renewal Agreement Under the Same Terms (*Id.* at ¶¶ 55-66)

Count 4.  Declaratory Judgment (*Id.* at ¶¶ 67-72)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For the purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

A complaint need not contain "detailed factual allegations" in order to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1949, and *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertions ... without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.*

## III. DISCUSSION

Pursuant to Rule 12(b)(6), Defendant moves to dismiss each count of the Amended Complaint for failure to state a claim upon which relief can be granted. *See* Def.'s Mot. Dismiss; Def.'s Mem. Supp. 1. In determining whether each count is plausibly pled, the Court will assess whether the Amended Complaint states sufficient facts in support of the underlying elements for each offense.

### A. Diversity Jurisdiction

A federal court has subject matter jurisdiction over disputes involving diversity jurisdiction. 28 U.S.C. § 1332(a). Federal diversity jurisdiction exists when adverse parties to a lawsuit are citizens of different states. *Id.* at § 1332(a)(1). Diversity jurisdiction also requires complete diversity, meaning that "the state citizenship of each plaintiff must be different from that of each defendant." *Athena Auto., Inc. v. DiGregorio*, 166 F.3d 288, 290 (4th Cir. 1999); *see also Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (holding that "the current general-diversity statute [28 U.S.C. § 1332(a)] ... applies only to cases in which the citizenship of each plaintiff is diverse from the citizenship of each defendant.").

For diversity purposes, a corporation is a citizen of both the state in which it is incorporated and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). The citizenship of a limited liability company ("LLC") "turns not on its place of formation or principal place of business, but on the citizenship of [its] members." *Travelers Indem. Co. of Am. v. Portal Healthcare Solutions, LLC*, 644 F. App'x 245, 246 (4th Cir. 2016); *see also Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990) (holding that the citizenship of an unincorporated entity, such as a partnership, is determined by the citizenship of all of its members). In the case of an LLC

suing another LLC, this means that none of the plaintiff's members may be citizens of the same state as any of the defendant's members. *Athena Auto., Inc.*, 166 F.3d at 290.

Federal Rule of Civil Procedure 8(a)(1) requires a plaintiff's complaint to make "a short and plain statement of the grounds for the court's jurisdiction." To do so, the plaintiff must allege "the facts essential to show jurisdiction." *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936). At the very least, this requires the plaintiff to allege facts showing complete diversity of citizenship between the parties. *Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968), *cert. denied*, 393 U.S. 891 (1968). In this case, the Court has diversity jurisdiction because the parties are completely diverse and the amount in controversy exceeds $75,000. Am. Compl. ¶ 5. Specifically, both Plaintiffs are citizens of Texas and Defendant is a citizen of Virginia and Delaware. *Id.* at ¶¶ 1-4. Further, Plaintiffs request damages in the total amount of $2,735,560.00. *Id.* at ¶¶ 49, 54, 66. Accordingly, the Court has jurisdiction over the instant action.

### B. Count One: Breach of Contract – Wrongful Termination of Agreement

To succeed on a breach of contract claim at trial, under Virginia[1] law, Plaintiffs must establish the following elements: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154 (2009); *Filak v. George*, 267 Va. 612, 619 (2004). The Court "construe[s] the contract as a whole" when ascertaining the meaning of any portion or provision of a contract, such as those situations where parties dispute the meaning of a term or phrase. *Doctors Co. v. Women's Healthcare Assocs., Inc.*, 285 Va. 566, 572 (2013); *Am. Spirit Ins. Co. v. Owens*, 261 Va. 270,

---

[1] State law governs contractual matters. *James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421-22 (4th Cir. 2004). The parties agree that Virginia law applies here because of the choice-of-law provisions in the Area Developer Agreements. *See* Am. Compl., Ex. A, at 12; Ex. B, at 15; Ex. C, at 15.

7

275 (2001). An agreement "complete on its face" and plain and unambiguous in its terms precludes the need for any search beyond the instrument itself in construing the contract. *Ross v. Craw,* 231 Va. 206, 212 (1986). Any ambiguity that arises in the contractual language is construed against the drafter. *Doctors Co.,* 285 Va. at 573. However, a contractual provision is not ambiguous merely because the parties disagree as to the provision's meaning. *TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.,* 263 Va. 116, 119 (2002) (citing *Ross,* 231 Va. at 212-13). Further, Virginia law presumes parties do not include meaningless contract provisions. *Ross,* 231 Va. at 214; *D.C. McClain, Inc. v. Arlington County,* 249 Va. 131, 135-36 (1995). Therefore, no word or clause will be treated as meaningless so long as a reasonable meaning can be attributed to it. *Berry v. Klinger,* 225 Va. 201, 208 (1983); *Winn v. Aleda Constr. Co.,* 227 Va. 304, 307 (1984). Here, the parties agree that the AD Agreements upon which Plaintiffs base the Amended Complaint create a legally enforceable obligation of Defendant to Plaintiffs. *See* Def.'s Mem. Supp; Pls.' Mem. Opp.; Def.'s Reply. The parties diverge, however, on whether Defendant violated or breached the Agreement.[2] *Id.*

Defendant moves to dismiss Count I[3] because they argue that Road King failed to allege termination, rather than non-renewal, of its AD Agreement. Def.'s Mem. Supp. 7. In support, Defendant only contends that Road King does not allege that it complied with the four conditions precedent for renewal. *Id.* at 11. Plaintiffs' claim, however, is not that Defendant wrongfully failed to renew the Agreement, but rather that Defendant wrongfully terminated the Agreement. As such, it is not necessary for the Court to decide whether Plaintiff satisfied the renewal conditions; the Court need only decide whether Plaintiffs allege a plausible claim for wrongful

---

[2] Since Counts I-III all allege breach of contract claims, the legal analysis here will be the same or similar for Counts II and III.

[3] Plaintiffs allege Count I with respect to Road King only. Am. Compl. 6.

termination of the Agreement.[4] The primary, threshold issue, therefore, is whether Defendant terminated its AD Agreement with Road King, or whether the Agreement was non-renewed.[5] The parties agree that termination and non-renewal are distinct actions but disagree regarding which one occurred here. *See* Def.'s Mem. Supp. 8; *cf.* Pls.' Mem. Opp. 6.

The parties also agree that, on or about November 18, 2014, Defendant agreed to and executed an Early Renewal Agreement with Road King to renew the AD Agreement originally entered into on or about June 28, 2005, which was set to expire on June 28, 2015. *See* Am. Compl., Ex. B. Paragraph 7.1 of the Renewal Agreement states that the term of the Agreement is six years. *Id.* at Ex. B, at 11. Therefore, according to the core of the Renewal Agreement standing alone, the renewed AD Agreement was set to expire on November 18, 2020. However, Plaintiffs also point to an addendum to that Agreement, titled "Acknowledgement of Early Renewal of Area Developer Agreement," which they argue changed the term of Agreement to ten years, meaning it would expire on November 18, 2024. *Id.* at Ex. B, at 24. The addendum, signed by the parties and dated November 18, 2014, states, in relevant part:

> "The undersigned Area Developer acknowledges that the Area Developer Agreement entered into by and between Area Developer and JTH Tax, Inc. d/b/a Liberty Tax Service dated June 28, 2005 was for a ten (10) year term which is set to expire on June 28, 2015.

---

[4] A Rule 12(b)(6) motion does not generally invite an analysis of potential defenses to the claims asserted in the complaint. *E. Shore*, 213 F.3d at 185; *see also JTH Tax LLC v. Natalie Grabowski, Supernat LLC*, No. 19 C 8123, 2020 WL 6203355, at *2 (N.D. Ill. Oct. 22, 2020) ("[A]t this point the Court is assessing only the sufficiency of [plaintiff]'s allegations. Liberty's denials and the additional factual contentions it offers [that plaintiff was not entitled to renewal] are not appropriately before the Court in considering a motion under Rule 12(b)(6)."). A court may consider defenses on a 12(b)(6) motion only "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Id.* (quoting *Brooks v. City of Winston–Salem*, 85 F.3d 178, 181 (4th Cir. 1996)) (citing 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 348–49 (2d ed.1990)). Here, the Court finds that the Amended Complaint does not clearly reveal any affirmative defenses and therefore declines to consider any asserted.

[5] Defendant relies heavily on the Fourth Circuit's decision in *Hamden v. Total Car Franchising Corp.*, 548 F. App'x. 842 (4th Cir. 2013). Def.'s Mem. Supp. 8-9; Def.'s Reply 5-6. However, that case did not involve a dispute over *when* the contract ended, but rather whether the natural end of a 15-year contract with restrictive covenants qualifies as termination. *Hamden*, 548 F. App'x at 843. Here, the dispute is over whether the Agreement was for a term of six years or ten years, which dictates whether the Agreement was terminated or non-renewed. Therefore, Defendant's reliance on *Hamden* in this context is misplaced.

> The parties hereby acknowledge, desire, and consent to the early renewal of the Area Developer Agreement and enter into a new Area Developer Agreement which is effective November 18, 2014 and, pursuant to the Area Developer Agreement is also for a ten (10) year term commencing on the effective date of this Agreement. The parties acknowledge that they are under no obligation to renew the Area Developer Agreement at this earlier date and desire and do so of their own free will."

*Id.*

Defendant claims that "[t]here is no statement that the acknowledgment amends the express terms of the Road King AD Agreement."[6] Def.'s Mem. Supp. 8, n.2. However, Plaintiffs point to Paragraph 8.13 of the Renewal Agreement, which states that "[n]o amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party." Am. Compl. Ex. B, at 17. The addendum Plaintiffs rely on to indicate that the Agreement was modified to a term of ten years was a written document that was signed by Jerry Bayless, the President of Road King, and John Hewitt, the CEO of Liberty.[7] *Id.* at Ex. B, at 24. Therefore, Plaintiffs have sufficiently plead that the "Acknowledgement of Early Renewal of Area Developer Agreement" document is an amendment to the Agreement that modifies its term to ten years.[8]

---

[6] Defendant notes that Schedule B of the 2014 Road King Agreement sets forth Road King's Minimum Requirement obligations for six years. Def.'s Reply 4. However, the fact that Schedule B is consistent with a six-year term does not necessarily contradict that the Agreement was amended to a term of 10 years.

[7] The addendum also reflects the signature of Rhonda Bayless as a representative of Road King, whose title on the form is listed as "Mrs." While it is unclear to the Court whether Rhonda Bayless was an authorized representative, it is sufficient that Jerry Bayless, as President, was a representative authorized to sign the document.

[8] Defendant also points to actions taken by Plaintiffs that "contradict" the allegation that the Acknowledgment Form amended the Agreement. Def.'s Mem. Supp. 8, n.2. However, as Plaintiffs correctly argue, the Court may not consider outside evidence when interpreting a fully integrated Agreement without violating the parol evidence rule. Pls.' Mem. Opp. 6, n.2; *see also* Am. Compl. Ex. B, at 16-17 (integration clause in Paragraph 8.12); Ex. C, at 16-17 (same). Defendant even relies on the parol evidence rule when rebutting the relevance and propriety of certain evidence Plaintiffs cite in their opposition paper. *See* Def.'s Reply 15-16 (citing *In re Circuit City Stores, Inc.*, 591 B.R. 289, 294, n.12 (Bankr. E.D. Va. 2018); *Whitt v. Godwin*, 205 Va. 797, 802 (1965); *Newcom Holdings Pty. Ltd. V. Imbros Corp.*, 369 F.Supp.2d 700, 711, n.13 (E.D. Va. 2005); *Utsch v. Utsch*, 266 Va. 124, 130 (2003))).

Defendant does not challenge the sufficiency of Plaintiffs' claims regarding the specific ways in which Defendant allegedly violated the Agreement, only that Plaintiffs did not sufficiently plead that Road King's AD Agreement was modified to extend beyond six years. Plaintiffs have stated a plausible claim that the Agreement term was amended to ten years such that Defendant breached the Agreement by wrongful termination. Moreover, Plaintiffs have alleged that Road King suffered injury or damages from wrongful termination. Am. Compl. ¶ 49. Thus, the Court concludes that Plaintiffs state a plausible breach of contract claim. *Sunrise*, 277 Va. at 154; *Filak*, 267 Va. at 619.

Accordingly, Defendant's Motion to Dismiss Count I is **DENIED**.

### C. Count Two: Breach of Contract – Failure to Pay Franchise Royalties

As mentioned, to succeed on a breach of contract claim at trial, Plaintiffs must establish: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *Sunrise*, 277 Va. at 154; *Filak*, 267 Va. at 619. Under Virginia law, where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. *TM Delmarva*, 263 Va. at 119. However, a contractual provision is not ambiguous merely because the parties disagree as to the provision's meaning. *Id.* Any ambiguity that arises in the contractual language is construed against the drafter. *Doctors Co.*, 285 Va. at 573. Here, the issue is whether Defendant violated its legal obligation under the AD Agreement to pay Plaintiffs franchise royalties.

Defendant moves to dismiss Count II[9] because they argue that "Plaintiffs fail to sufficiently allege an obligation that Liberty pay them a portion of 'newly enacted e-filing fees

---

[9] Plaintiffs allege Count II with respect to both Road King and ZeeDee. Am. Compl. 8.

11

charged by Liberty Tax to the Franchisees.'" Def.'s Mem. Supp. 12 (citing Am. Compl. ¶ 53). In support, Defendant argues that the express terms of the AD Agreements "itemize the specific revenue and sources of revenue to which the AD is entitled." *Id.* (citing Am. Compl. Exs. B, C § 3). Specifically, Liberty contends that the AD Agreements identify "three buckets of revenue": (1) initial franchise fees; (2) interest on promissory notes; and (3) royalties. *Id.* Defendant concludes that Plaintiffs fail to state a claim because e-filing fees are not specified as a revenue bucket and the itemization of revenue buckets itself "establish[es] that ADs are not entitled to all revenue streams." *Id.* at 12-13.

Plaintiffs plead that Defendant breached the AD Agreements by failing to pay the full share of royalties and fees owed to them pursuant to Paragraph 3.3 of the Agreement by the deadline set forth in Paragraph 3.10. Am. Compl. ¶¶ 51-53. Specifically, Plaintiffs state that Paragraph 3.3 obligates Defendant to pay "an amount equal to 50% of all ongoing royalties received by Liberty, if any, from a Franchisee during the Term." *Id.* at ¶ 51. Paragraph 3.10 states that Defendant "will pay Area Developer its share of royalties of franchise fees not later than the last day of the next calendar month." *Id.* at ¶ 52. Plaintiffs acknowledge that the Agreement "does not specifically define what is included within the revenue stream subject to royalties." Pls.' Mem. Opp. 15. They allege, however, that "[e]-filing fees are considered a tax preparation fee and must be included in the calculations when determining royalty payments to ADs." *Id.* at ¶ 14. As such, Plaintiffs claim they are entitled to their portions of the e-filing fees Defendant charged to the Franchisees and were due to receive those fees by the deadline stated in Paragraph 3.10.[10] *Id.* at ¶ 53.

---

[10] The Court will not consider any matters not raised in the Amended Complaint. To the extent that the parties have raised factual issues outside the scope of the Amended Complaint in their support and opposition papers, the Court will not consider them. *See Zak v. Chelsea therapeutics Intern., Ltd.*, 780 F.3d 597, 607 (4th Cir.

Defendant replies that Plaintiffs' allegation that e-filing fees qualify as royalty payments is a "conclusory and unsupported statement" that "contradicts the express terms of the respective AD Agreements." Def.'s Reply 9. Yet, Defendant fails to point to language in the Agreement defining "royalties" such that e-filing fees cannot fall within that revenue bucket. Therefore, the Court finds that the term "royalties" could plausibly be ambiguous and construed against Defendant, as the drafter, to include e-filing fees such that failure to fully and timely pay them constituted a breach of Plaintiffs' AD Agreements. *Doctors Co.*, 285 Va. at 573. Moreover, Plaintiffs have alleged that they suffered damages from Defendant's failure to pay franchise royalties. Am. Compl. ¶ 54. Thus, the Court concludes that Plaintiffs state a plausible breach of contract claim. *Sunrise*, 277 Va. at 154; *Filak*, 267 Va. at 619.

Accordingly, Defendant's Motion to Dismiss Count II is **DENIED**.

### D. Count Three: Breach of Contract – Failure to Provide Renewal Agreement Under the Same Terms

As mentioned, to succeed on a breach of contract claim at trial, Plaintiffs must establish: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *Sunrise*, 277 Va. at 154; *Filak*, 267 Va. at 619. The Court "construe[s] the contract as a whole" when ascertaining the meaning of any portion or provision of a contract, such as those situations where parties dispute the meaning of a term or phrase. *Doctors Co.*, 285 Va. at 572; *Am. Spirit*, 261 Va. at 275. An agreement "complete on its face" and plain and unambiguous in its terms precludes the need for any search beyond the instrument itself in construing the contract. *Ross*, 231 Va. at 212. Any ambiguity that arises in the contractual language is construed

---

2015) (holding the district court, in ruling on a motion to dismiss, should not have considered documents not explicitly referenced in, or an integral part of, the complaint).

13

against the drafter. *Doctors Co.*, 285 Va. at 573. However, a contractual provision is not ambiguous merely because the parties disagree as to the provision's meaning. *TM Delmarva*, 263 Va. at 119 (2002) (citing *Ross*, 231 Va. at 212-13). Further, Virginia law presumes parties do not include meaningless contract provisions. *Ross*, 231 Va. at 214; *D.C. McClain*, 249 Va. at 135-36. Therefore, no word or clause will be treated as meaningless so long as a reasonable meaning can be attributed to it. *Berry*, 225 Va. at 208; *Winn*, 227 Va. at 307.

Defendant moves to dismiss Count III[11] for three reasons.[12] Def.'s Mem. Supp. 13-14. Defendant's first two reasons address legal defenses not properly before the Court at this stage in litigation[13]; therefore, the Court will only discuss the third. Defendant argues that the renewal clause – Paragraph 7.2 of the AD Agreement – does not include any words or phrases that can be interpreted to require that the renewed AD Agreement "include exactly the same or similar terms" as ZeeDee's original Agreement. Def.'s Mem. Supp. 13. Paragraph 7.2 states in full:

> "Upon the completion of the Term of this Agreement, provided Area Developer is in compliance with the terms and conditions in this Agreement, Liberty will provide Area Developer with the right to enter into a new agreement with Liberty for the provision of services similar to those in this Agreement. If Area Developer wishes to renew this Agreement, Area Developer must notify Liberty in writing at least one hundred and eighty (180) days before the expiration of this Agreement. There will be no fee for the renewal, but Area Developer must execute a general release of all claims it may have against Liberty. Area Developer may also renew future Area Developer Agreements, if Area Developer is in compliance with the terms and conditions in such agreements, meets the other conditions therein for renewal, and renews by

---

[11] Plaintiffs allege Count III with respect to ZeeDee only. Am. Compl. 9. However, the Court notes that Plaintiffs' prayer for relief also includes relief for Road King, which is inconsistent. *See id.* at 11.
[12] Defendant argues (1) Virginia law disfavors finding perpetual rights without a clear expression of the parties' intent; (2) renewal of the ZeeDee AD Agreement in the form Defendant currently offers at the time of renewal is the only reasonable interpretation of the renewal provision pursuant to Defendant's obligations under the Franchise Rule; and (3) the renewal clause does not entitle Plaintiff to enter a Renewal Agreement under the same exact terms. Def.'s Mem. Supp. 13-14.
[13] *See supra* note 4. It is noted that this reasoning also applies to the Court's decision not to address Defendant's anticipatory defense to Plaintiffs' "implicit" waiver claim, which Plaintiffs nowhere assert. *See* Def.'s Reply 13-16.

> signing Liberty's then current Area Developer Agreement. The fees and percentages described in Sections 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in Section 4.1 above."

Am. Compl. Ex. C, at 10-11.

Plaintiffs allege that Defendant breached the AD Agreement with ZeeDee by preventing ZeeDee from entering into the same Agreement it entered in 2015 and instead only allowing ZeeDee to enter into a materially different Revised AD Agreement. *Id.* at ¶¶ 62-63, 66. Pursuant to Paragraph 7.2, Plaintiffs allege they had three renewal options or "paths": "(1) a new agreement for the provision of similar services upon the completion of the original term; (2) renewal of this Agreement upon notice of at least 180 days prior to the expiration of the original term; and (3) future Area Developer Agreements." Pls.' Mem. Opp. 8. Accordingly, Plaintiffs contend that there are three distinct sets of conditions precedent for each path. *Id.* at 9. ZeeDee claims it elected the second option – to renew "this Agreement" – which, it argues, it was entitled to do under the one condition that it notify Defendant in writing of its intent to renew at least 180 days before the expiration of the Agreement. *Id.* ZeeDee properly notified Defendant of its intent more than six months prior to the expiration date of January 9, 2021. Am. Compl. ¶ 58. Defendant, on the other hand, alleges that ZeeDee was only entitled to renew the AD Agreement in the form that it offered at the time of renewal. Def.'s Mem. Supp. 13, 15. Further, Defendant argues that its then-current Agreement "is not required to state the same terms" as ZeeDee's original AD Agreement. *Id.* Neither party points to any other provision in the Agreement to support its position.

Since Virginia law presumes parties do not include meaningless contract provisions, no word or clause will be treated as meaningless so long as a reasonable meaning can be attributed to it. *Ross*, 231 Va. at 214; *D.C. McClain*, 249 Va. at 135-36; *Berry*, 225 Va. at 208; *Winn*, 227

15

Va. at 307. Defendant's argument that ZeeDee was only entitled to renew Defendant's then-current AD Agreement, however, would effectively render meaningless the language in Paragraph 7.2 drawing a distinction between the conditions precedent for renewing "this Agreement" and those for renewing "future Agreements." Further, at this stage in litigation, the Court finds that Paragraph 7.2 could plausibly be ambiguous and construed against Defendant, as the drafter, to allow ZeeDee to renew its AD Agreement under the same terms. *Doctors Co.*, 285 Va. at 573. In other words, the language of Paragraph 7.2 does not necessarily foreclose Plaintiffs' allegation that Defendant breached ZeeDee's AD Agreement by preventing it from renewing under the same terms. Moreover, Plaintiffs have alleged that ZeeDee suffered injury or damages from the failure to provide a Renewal Agreement under the same terms. Am. Compl. ¶¶ 65-66. Thus, the Court concludes that Plaintiffs state a plausible breach of contract claim. *Sunrise*, 277 Va. at 154; *Filak*, 267 Va. at 619.

Accordingly, Defendant's Motion to Dismiss is **DENIED** as to Count III.

### E. Count Four: Declaratory Judgment

Plaintiffs assert a claim for declaratory relief pursuant to the Declaratory Judgment Act. Am. Compl. ¶ 72 (claiming relief under 28 U.S.C. § 2201). The Declaratory Judgment Act grants district courts the authority, "[i]n a case of actual controversy within its jurisdiction … [and] upon the filing of an appropriate pleading, … [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Declaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation and are untimely if the questionable conduct has already occurred or damages have already accrued." *Tapia v. U.S. Bank, N.A.*, 718 F. Supp. 2d 689, 695 (E.D. Va. 2010), *aff'd*, 441 F. App'x 166 (4th Cir. 2011) (quoting *The Hipage Co., Inc.*

*v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615 (E.D. Va. 2008)) (internal quotations omitted). Declaratory judgment is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).

Defendant moves to dismiss Count IV[14] as inappropriate and unwarranted because Plaintiffs fail to state a claim creating a definite and concrete justiciable controversy, and, even if they did, the alleged contract breaches have already occurred, and their respective damages have already accrued. Def.'s Mem. Supp. 17. As previously concluded, Plaintiffs do not fail to state a claim for breach of contract under Counts I, II, or III. Further, Plaintiffs do not merely bring a claim for past wrongs, but also request prospective relief in the form of orders declaring their entitlements to renew the same AD Agreements, that the Revised AD Agreements contain material differences from the originals, and that the new Agreements be provided to them upon the specific performance prayed for in Counts I and III. Am. Compl. ¶ 72. These claims are forward-looking and, regardless of whether they are ultimately granted, "serve a useful purpose in clarifying and settling the legal relations in issue." *Centennial*, 88 F.3d at 256. While the Court notes that Plaintiffs' claims for relief throughout the Amended Complaint may be duplicative, it finds that Plaintiffs' claims for declaratory relief are prospective. Further, the Court finds that it is not appropriate at this juncture to rule on the merits of Plaintiffs' claims for declaratory relief without the parties conducting discovery.

Accordingly, Defendant's Motion to Dismiss is **DENIED** as to Count IV.

---

[14] Plaintiffs allege Count IV with respect to both Road King and ZeeDee. Am. Compl. 11.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **DENIED**. Defendant is hereby **ORDERED** to file an Answer to the Amended Complaint within **FOURTEEN (14) DAYS** of the entry of this Order.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the Parties.

**IT IS SO ORDERED**.

Norfolk, Virginia
November 19, 2021

/s/
Raymond A. Jackson
United States District Judge