**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**ROAD KING DEVELOPMENT, INC.,** *et al.,*

**v.**                                                                  **CIVIL ACTION NO.  2:21-cv-55**

**JTH TAX LLC d/b/a Liberty Tax Service,**

        **Defendant.**

FILED

FEB 1 7 2023

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## *MEMORANDUM OPINION AND ORDER*

Before the Court are Plaintiff Road King Development, Inc. ("Road King") and ZeeDee, LLC's ("ZeeDee") (collectively, "Plaintiffs") and Defendant JTH Tax, LLC, d/b/a Liberty Tax Service's ("Defendant" or "Liberty") cross Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Pl.s' Amend. Summ. J., ECF No. 88; Def.'s Mot. Summ. J., ECF No. 60. The Court has reviewed the Motions, accompanying declarations, and exhibits. Pl.s' Mem. Supp. Amend. Mot. Summ. J., ECF No. 89 ("Pl.s' Amend. Mem. Supp."); Def.'s Mem. Opp'n to Pl.s' Amend. Mot. Summ. J., ECF No. 91 ("Def.'s Mem. Opp'n"); Pl.s' Amend. Reply to Def.'s Mem. Opp'n to Pl.s' Amend. Mot. Summ. J., ECF No. 92 ("Pl.s' Amend. Reply"); Def.'s Mem. Supp. Mot. Summ. J., ECF No. 61 ("Def.'s Mem. Supp."); Def.'s Aff. Supp. Mot. Summ. J., ECF No. 62, ("Def.'s Aff. Supp."); Pl.s' Mem. Opp'n to Def.'s Mot. Summ. J., ECF No. 74 ("Pl.s' Mem. Opp'n"); Def.'s Reply to Pl.s' Mem. Opp'n to Def.'s Mot. Summ. J., ECF No. 79 ("Def.'s Reply"). Upon review, the Court finds that a hearing on these Motions is not necessary, and this matter is ripe for judicial determination. *See* E.D. Va. Loc. Civ. Rule 7(J).

The Court **FINDS** that JTH TAX LLC d/b/a Liberty Tax Service is entitled to judgment as a matter of law and, therefore, Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part**. Additionally, for the reasons below Plaintiffs' Amended Partial Motion for Summary Judgment is **GRANTED in part and DENIED in part**.

## I.   PROCEDURAL AND FACTUAL HISTORY

On January 28, 2022, Plaintiffs filed a Complaint and amended the complaint on February 25, 2021. Compl., ECF No. 1; Am. Compl., ECF No. 6. On September 5, 2022, Defendant filed their Motion for Summary Judgment. Def.'s Mot. Summ. J. On September 19, 2022, Plaintiffs responded in opposition. Pl.s' Mem. Opp'n. On October 3, 2022, Defendant replied. Def.'s Reply. On September 9, 2022, Plaintiffs filed a Motion for Summary Judgment. Pl.s' Mot. Summ. J., ECF No. 63. September 23, 2022, Defendant responded in opposition. Def.'s Resp. Opp'n to Pl.s' Mot. Summ. J., ECF No. 76. October 6, 2022, Plaintiffs replied. Pl.s' Reply, ECF No. 79.

On June 17, 2022, Plaintiffs filed a Motion for Leave to File Second Amended Complaint and attached the Second Amended Complaint to the Memorandum in Support. Mot. Second Amend. Compl., ECF No. 53; Second Amend. Compl., ECF No. 54-1 ("SAC"). The SAC alleged the following causes of action: (1) Breach of Contract- Wrongful Termination as to Road King, (¶¶ 44-55); (2) Breach of Contract- Failure to Pay Franchise Royalties as to Road King and ZeeDee, (¶¶ 56-60); and (3) Breach of Contract- Wrongful Termination as to ZeeDee, (¶¶ 61-72). SAC, ECF No. 54-1. On October 31, 2022, the Court granted Plaintiffs leave to file an amended complaint and granted all parties leave to file amended motions for summary judgment. Mot. Granting Leave to File Amend. Compl., ECF. No. 85. On November 14, 2022, Defendant filed an Answer. Answer to SAC., ECF No. 86.

On November 15, 2022, Defendant responded to the Order Granting Leave to file amended motions for summary judgment stating that the previous motion responded to the SAC in full. Resp. to Order Granting Mot. for Leave to File, ECF. No. 87. On November 15, 2022, Plaintiffs filed their Amended Motion for Summary Judgment. Pl.s' Amend. Mot. Summ. J. On November 29, 2022, Defendant responded in opposition. Def.'s Mem. Opp'n. On December 5, 2022, Plaintiffs replied. Pl.s' Amend. Reply. Accordingly, this matter is ripe for judicial determination.

2

When faced with cross motions for summary judgment, the Court considers "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir.2003) (internal quotations omitted). Although the parties dispute certain facts, the following facts are uncontested except where noted.[1]

Defendant sells franchises engaged in the preparation of tax returns as well as Area Development ("AD") territories that support the franchises within their prescribed geographic boundaries. SAC. at ¶ 8; *See also*, Def.'s Mem. Supp. at ¶ 3; Pl.s' Amend. Mem. Supp. at ¶ 3. Both Road King and ZeeDee are parties with two separate AD Agreements with Defendant. SAC at ¶ 9.

### A. Road King's Area Development Agreements and Termination

On or about June 28, 2005, Road King entered into an AD Agreement with Liberty for sixteen separate counties in Texas ("Road King's 2005 AD Agreement"). SAC, at ¶ 10; Def.'s Mem. Supp., at 4; Pl.s' Amend. Mem. Supp., at 8. Road King's 2005 AD Agreement was set to expire on June 28, 2015 and was for a ten-year term. *See* Pl.s' Mem. Supp. Ex. 1 at § 8.1 ("Road King's 2005 AD Agreement"); Def.'s Mem. Supp. at ¶ 17.

The 2005 AD Agreement required Road King to develop candidates to become franchise owners and provide support services to franchises. Road King's 2005 AD Agreement §§ 1.1 and 1.2;

---

[1] Before this Court, the parties must comply with the summary judgment pleading standard set out in Local Civil Rule 56, which states, in pertinent part:

> Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, the Court may assume the facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. VA. LOC. CIV. R. 56(B). Plaintiffs responded to Defendant's list of material facts. Pl.s' Mem. Opp'n at 2-8. Defendant responded to Plaintiffs' list of material facts. Def.'s Mem. Opp'n. at 3-13.
Accordingly, the facts recited herein derive from the undisputed facts from Plaintiffs' and Defendant's list of material facts, supported by the record, incorporating disputes where relevant and material.

Def.'s Mem. Supp at ¶ 14; SAC at ¶ 10. The 2005 AD Agreement contained "Minimum Area Developer Performance" requirements, which required Road King to provide Liberty with a minimum number of candidates each year that open franchises in Road King's designated territory as set forth on Schedule B (the "Development Schedule"). Road King's 2005 AD Agreement § 4.1 and Schedule B; Def.'s Mem. Supp. at ¶ 15. In exchange for Road King providing the specified services, Liberty agreed to pay Road King a certain percentage of franchise fees and franchise royalties received by Liberty from franchises in Road King's territory. Road King's 2005 AD Agreement §§ 3.2 and 3.3; Def.'s Mem. Supp. at ¶ 16. The Development Schedule in Road King's 2005 AD Agreement provided the minimum franchise development requirements for ten years through 2015. Road King's 2005 AD Agreement at 17; Def.'s Mem. Supp. at ¶ 18.

On or about November 18, 2014, Liberty executed an early renewal agreement with Road King ("Road King's 2014 AD Agreement"). Pl.s' Amend. Mem. Supp., at ¶ 47; Def.'s Mem. Supp., at ¶ 19. Road King's 2014 AD Agreement required Road King to satisfy the "Minimum Area Developer Performance" requirements and provided that Liberty would pay Road King a percentage of franchise fees and franchise royalties received from franchises in Road King's territory. Pl.s' Mem. Supp., Ex. 2 at 8 ("Road King's 2014 AD Agreement"); Def.'s Mem. Supp. at ¶ 21. Section 7.1 of Road King's 2014 AD Agreement stated that the term was for six years through November 18, 2020. Road King's 2014 AD Agreement at §7.1; Def.'s Mem. Supp. at ¶ 21. The Section reads as follows in its entirety: "7.1 Term. This Agreement will commence upon its Effective Date and will last for a term of six (6) years (the "Term")." *Id.*

In regards to amending the contract, Road King's 2014 AD Agreement states, "[n]o amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party." *Id.* at § 8.13. Road King and Liberty also executed an Acknowledgement of Early Renewal of Area Developer Agreement (the "Acknowledgement"), attached to the back of Road

King's 2014 AD Agreement. *See* Pl.s' Amend. Mem. Supp. Ex. 2 at 24. The Acknowledgement states that the parties "acknowledge, desire, and consent to the early renewal" of the 2005 Agreement, which had been for a ten-year term, and "enter into a new Area Developer Agreement, which is effective November 18, 2014 and pursuant to the Area Developer Agreement is also for a ten (10) year term commencing on the effective date of this Agreement." *Id.* The Acknowledgement is in writing and signed by Jerry Bayless on behalf of Road King, and John Hewitt, former CEO of Liberty as its authorized representative. *Id.*

On April 23, 2020, Jerry Bayless, on behalf of Road King, submitted a message to Liberty requesting to renew Road King's 2014 AD Agreement. Pl.s' Amend. Mem. Supp., at ¶ 55; Def.'s Mem. Supp., at ¶ 66. Jerry Bayless' April 23, 2020 message was sent through Liberty's Issue Tracker system and was directed to a Liberty regional support coordinator named Andrea Foran. Def.'s Mem. Supp, at ¶ 67. The Summary of the message stated, "Time to Renew AD Agreement for ent 3749." Pl.s' Amend. Mem. Supp, at Ex. 4. The message stated, "Andrea, My AD Agreement for ent 3749 expires in about 6 months. Please put the wheels in motion to renew the AD Agreement. Thanks. Jerry Bayless." *Id.* On July 28, 2020, Liberty replied "Update, this is still in progress." *Id.* On November 23, 2020, Liberty sent Road King a letter with the subject line, "Non- Renewal of Area Development Agreement." Def.'s Mem. Supp., at ¶ 69. Liberty's non-renewal letter explained that Road King's 2014 AD Agreement "expired on November 18, 2020" and that "due to [Road King's] failure to meet the development goals as set forth in the Area Developer Agreement, Liberty will not renew [Road King's] Area Developer Agreement." *Id.* at ¶ 70. Liberty did not provide a notice letter to Road King before November 23, 2020 related to failures to meet the terms and conditions of the contract. Pl.s' Amend. Mem. Supp. at ¶ 69; Def.'s Mem. Opp'n., at ¶ 69.

### B. ZeeDee's Area Development Agreement

On or about January 9, 2015, ZeeDee entered into an AD Agreement with Liberty for a territory previously operated by Road King. Pl.s' Amend. Mem. Supp., at ¶ 52. David Perez signed the AD

5

Agreement on behalf of ZeeDee. Def.'s Mem. Supp., at ¶ 30. Similar to the Road King AD agreements, ZeeDee's 2015 AD Agreement required ZeeDee to satisfy the "Minimum Area Developer Performance" requirements and provided that Liberty would pay Road King a percentage of franchise fees and franchise royalties received from franchises in Road King's territory. *Id.* at ¶ 31. Plaintiffs dispute whether the "Minimum Requirements" were required as terms in the contract. Pl.s' Mem. Opp'n, at ¶ 31. Section 7.1 of ZeeDee's 2015 AD Agreement stated that it was for a term of six years, set to expire on January 9, 2021. Pl.s' Amend. Mem. Supp., Exh. 3 ("ZeeDee's 2015 AD Agreement") at § 7.1. Consistent with the six-year term of ZeeDee's 2015 AD Agreement, the Development Schedule provided the minimum franchise development requirements for six years through 2021. *Id.* at Schedule B. ZeeDee did not meet the "Minimum Requirements" provision in Section 4.1 of the 2015 AD Agreement which obligated them to "provide Liberty with a minimum number of [franchise] Candidates each year that open Franchise Territories with an active Liberty office in operation" as set forth on the development schedule in Schedule B. Def.'s Mem. Supp., at ¶ 48; Pl.s' Mem. Opp'n., at ¶ 48; ZeeDee's 2015 AD Agreement § 4.1 and Schedule B.

On June 23, 2020, ZeeDee sent a message to Liberty regarding its intent to renew. Pl.s' Amend. Mem. Supp., at Ex. 5. ZeeDee sent the message through Liberty's Issue Tracker system for ADs and was not addressed to anyone in particular at Liberty. *Id.* The message stated, "I'm approaching the 6 month point before my AD Agreement expires. Thus, I am asking that you begin the process of renewing the AD Agreement for AD 8041." *Id.* Liberty replied that it would "start working on [its] AD renewal." *Id.* On April 13, 2021, Liberty sent ZeeDee a letter with the explaining that ZeeDee's 2015 AD Agreement "expired on January 9, 2021" and that "due to [ZeeDee's] failure to meet the development goals as set forth in the Area Developer Agreement, Liberty will not renew [its] Area Developer Agreement." Def.'s Mem. Opp'n, at ¶ 63.

### C. Provisions from the AD Agreements

**Renewal Provision**

The renewal provision in Road King's 2014 AD Agreement and ZeeDee's 2015 AD

Agreement states in full:

> **7.2 Renewal.** Upon the completion of the Term of this Agreement,
> provided Area Developer is in compliance with the terms and
> conditions in this Agreement, Liberty will provide Area Developer
> with the right to enter into a new agreement with Liberty for the
> provision of services similar to those in this Agreement. If Area
> Developer wishes to renew this agreement, Area Developer must
> notify Liberty in writing at least one hundred and eighty (180) days
> before the expiration of this Agreement. There will be no fee for the
> renewal, but Area Developer must execute a general release of all
> claims it may have against Liberty. Area Developer may also renew
> future Area Developer Agreements, if Area Developer is in compliance
> with the terms and conditions in such agreements meets the other
> conditions therein for renewal, and renews by signing Liberty's then
> current Area Developer Agreement. The fees and percentages
> described in Sections 3.2 and 3.3 above will not be reduced upon any
> renewal nor will the Territory be reduced, except as may be reduced
> due to failure to meet Minimum Requirements, as described in Section
> 4.1 above.

Road King's 2014 AD Agreement at § 7.2.; ZeeDee's 2015 AD Agreement at § 7.2.

The AD agreements contain a notice provision at Section 8.10 which states in full:

> **8.10 Notices.** Any notice, authorization, consent or other
> communication required or permitted under this Agreement must be
> made in writing and shall be given by mail or courier, postage fully
> prepaid, or delivered personally, to Liberty's CEO, at Liberty's
> National Office, presently 1716 Corporate Landing Parkway, Virginia
> Beach, Virginia 23454, Telephone: (757) 493-8855. Any such notice
> may also be given to Area Developer in the same manner at the address
> indicated below the Area Developer's signature on this Agreement or
> such other more current address as Liberty may have on file for Area
> Developer. Liberty may also give notice to Area Developer by e-mail.

Road King's 2014 AD Agreement at § 8.10.; ZeeDee's 2015 AD Agreement at § 8.10.

**Fee and Commissions Provisions**

Section 3 of the AD agreements set forth the fees and commission to which Road King and

ZeeDee were entitled under the AD agreements. Road King's 2014 AD Agreement at § 3.; ZeeDee's

2015 AD Agreement at § 3. Under Section 3.2 of the AD agreements, Liberty agreed to pay Road

King and ZeeDee "an amount equal to 50% of the initial franchise fee and interest on promissory

notes, if and only to the extent that such interest is on franchise fees or royalties... pursuant to the

7

terms in the franchise agreement between Franchisee and Liberty" subject to certain conditions. *Id.* at

§ 3.2.[2] Section 3.3 states in full:

> **3.3 Franchise Royalties.** Except as provided under Section 4.1, Liberty will pay Area Developer, as detailed under Section 3.10, an amount equal to 50% of all ongoing Royalties received by Liberty, if any, from a Franchisee during the Term except Royalties already due and owing before the Effective Date of this Agreement.
>
> Liberty will also pay to Area Developer this same royalty percentage on company-owned stores in Area Developer's Territory if a Franchisee store becomes company-owned after the Effective Date of this Agreement. The royalty percentage payable to Area Developer shall be calculated as the store were still a Franchisee store.

Road King's 2014 AD Agreement at § 3.3; ZeeDee's 2015 AD Agreement at § 3.3.

The underlying franchise agreements define "Royalties" as "14% of Gross Receipts" subject

to certain annual minimums. Def.'s Aff. Supp., Ex. L ("Franchise Agreement") at §4(d). The

franchise agreements state that E-Filing Fees are not included in Gross Receipts as follows:

> **m. Transmitter, Software, or Electronic Filing Fee.** Liberty reserves the right to impose a fee charged to you or your customers related to transmission of Financial Products, the provision of software, or the electronic filing of tax returns and, if charged to customers, may rebate a portion of the fee to you. Liberty may vary the dollar amount of the fee and may change its name. Any such fee is not included in your Gross Receipts.

*Id.* at §4(m).

**Amendment and Waiver Provision**

The AD agreements contain an amendment and waiver clause, which states in full:

> **8.13 Amendment and Waiver.** No amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party. No failure to exercise and no delay in exercising any right under this Agreement will operate as a waiver.

Road King's 2014 AD Agreement at § 8.13; ZeeDee's 2015 AD Agreement at § 8.13.

## II.    LEGAL STANDARD

---

[2] Plaintiffs argue that this language is inapplicable under the law but does not dispute whether this language exists in the contract. Pls.' Amend. Reply, at ¶ 28-33.

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. Proc. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). If the moving party makes the requisite showing, their burden is discharged to the nonmoving party, who must then "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324-25 (internal quotations omitted). Evidence produced for or against a summary judgment motion must be admissible at trial, but it does not need to be produced in an admissible form. *Id.* at 323–324.

When considering a motion for summary judgment, a court must view the facts—and inferences derived from the facts—in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. The preliminary question for the court is "'whether there is any [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" *Id.* at 251 (quoting *Improvement Co. v. Munson*, 14 Wall. 442, 448 (1872) (emphasis in original)). However, a nonmoving party must offer more than unsupported speculation to withstand summary judgment. *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–12 (4th Cir. 1986); *see also Anderson*, 477 U.S. at 249–250 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted). Moreover, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may consider the fact undisputed for purposes of the motion." Fed. Rule Civ. Proc. 56(e)(2); *accord* E.D. Va. Loc. Civ. Rule 56(B). Ultimately, there is "no genuine dispute as to any material fact"

9

when a party "fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

On summary judgment, a court reviews the evidence in the light most favorable to the non-moving party. *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). Here, Plaintiffs and Defendant have each filed cross-motions for summary judgment. Therefore, a court considers "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007) (internal quotation marks omitted). Moreover, in considering the motion for summary judgment filed by Plaintiffs, the facts and all reasonable inferences are accordingly drawn in Defendant's favor. On the other hand, in considering the motion for summary judgment initiated by Defendant, the facts and all reasonable inferences are accordingly drawn in Plaintiffs' favor. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)). This is a "fundamental principle" that guides a court as it determines wh9ether a genuine dispute of material fact within the meaning of Rule 56 exists. *Id.* "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.   DISCUSSION

### A.  Count One: Breach of Contract- Wrongful Termination as to Road King

To succeed on a breach of contract claim, under Virginia law, Plaintiffs must establish the following elements: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154 (2009); *Filak v. George*, 267

10

Va. 612, 619 (2004).[3] The Court "construe[s] the contract as a whole" when ascertaining the meaning of any portion or provision of a contract, such as those situations where parties dispute the meaning of a term or phrase. *Doctors Co. v. Women's Healthcare Assocs.*, Inc., 285 Va. 566, 572 (2013); *Am. Spirit Ins. Co. v. Owens*, 261 Va. 270, 275 (2001). An agreement "complete on its face" and plain and unambiguous in its terms precludes the need for any search beyond the instrument itself in construing the contract. *Ross v. Craw*, 231 Va. 206, 212 (1986). Any ambiguity that arises in the contractual language is construed against the drafter. *Doctors Co.*, 285 Va. at 573. However, a contractual provision is not ambiguous merely because the parties disagree as to the provision's meaning. *TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 263 Va. 116, 119 (2002) (citing *Ross*, 231 Va. at 212-13). Further, Virginia law presumes parties do not include meaningless contract provisions. *Ross*, 231 Va. at 214; D.C. *McClain, Inc. v. Arlington County*, 249 Va. 131, 135-36 (1995). Therefore, no word or clause will be treated as meaningless so long as a reasonable meaning can be attributed to it. *Berry v. Klinger*, 225 Va. 201, 208 (1983); *Winn v. Aleda Constr. Co.*, 227 Va. 304, 307 (1984).

### 1. Legally Enforceable Contract

Road King alleges that the Early Renewal Acknowledgement amended the term of the expiration date for Road King's contract from six years to ten years; therefore, Liberty's correspondence on November 23, 2020 constituted an improper termination. SAC at ¶¶ 44-55. Defendant argues that Road King is attempting to exploit a scrivener's error in the 2014 Early Renewal Acknowledgement that referenced the term of the 2014 AD agreement as ten years instead of six years. Def.'s Mem. Supp., at 17. Therefore, the 2014 AD agreement expired on November 18, 2020 and Liberty properly denied renewal. *Id.*

---

[3] State law governs contractual matters. *James v. Circuit City Stores, Inc.*, 370 F.3d 417, 421-22 (4th Cir. 2004). Virginia law applies here because of the choice-of-law provisions in the Area Developer Agreements. AD Agreements §8.8(a)

Whether a scrivener's error exists is a question of law. *Tiger Fibers, LLC v. Aspen Specialty Ins. Co.*, 594 F. Supp. 2d 630, 641 (E.D. Va. 2009). "A court's role in "correcting" documents is limited. The rule is well-settled that a court is not permitted to rewrite a document or add terms not included by the parties." *Westgate at Williamsburg Condo. Ass'n, Inc. v. Philip Richardson Co.*, 270 Va. 566, 575, (2005). A scrivener's error presents an exception to this general prohibition because scrivener's errors "are difficult to prevent, and . . . no useful social purpose is served by enforcing . . . mistaken terms." *Id.* (citing *S.T.S. Transport Service, Inc. v. Volvo White Truck Corp.*, 766 F.2d 1089, 1093 (7th Cir. 1985)). Scrivener's errors are those which are "demonstrably contradicted by all other documents" and are evidenced in the writing that can be proven without parol evidence. *Id.* at 575-576. Errors in the review process of the parties are not scrivener's errors. *Id.* at 578.

Here, Road King establishes a breach of a legally enforceable obligation because the 2014 Early Renewal Acknowledgement stated the term of the contract as ten years and was a valid addendum to Road King's 2014 AD Agreement. Section 7.1 of Road King's 2014 AD Agreement stated that the term for six years, and Schedule B provided development requirements for six years. Pl.s' Amend. Mem. Supp., Exh. 2 ("Road King's 2014 AD Agreement") at § 7.1 and Schedule B. However, the 2014 Early Renewal Acknowledgement, attached to Road King's 2014 AD Agreement, signed by the parties and dated November 18, 2014, states, in relevant part:

> "The parties hereby acknowledge, desire, and consent to the early renewal of the Area Developer Agreement and enter into a new Area Developer Agreement which is effective November 18, 2014 and, pursuant to the Area Developer Agreement is also for a ten (10) year term commencing on the effective date of this Agreement."

Road King's 2014 AD Agreement, at 24.

Liberty claims that "[n]othing in the Acknowledgement purported to amend the 2014 AD agreement." Def.'s Mem. Supp. at 18-19. However, Plaintiffs point to Section 8.13 of the Road King's 2014 AD Agreement, which states that "[n]o amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is

signed by an authorized representative of each party." Road King's 2014 AD Agreement, §8.13. The Acknowledgement was a written document that was signed by Jerry Bayless, the President of Road King, and John Hewitt, the CEO of Liberty, which are the only conditions necessary to modify the contract. *Id.*, at 24. The Acknowledgement clearly states that the term of the new AD Agreement would also be for a ten-year term. *Id.*

Further, no other documents "demonstrably contradicted" the Acknowledgement's modification to a term of ten years. Both Road King's 2014 AD Agreement and the Acknowledgement were signed on the same day. While the Development Schedule was not also modified to continue through ten years, a six-year schedule does not necessarily contradict a ten-year contract. One year after signing Road King's 2014 AD Agreement, the parties amended the minimum requirements to account for the transferring of various territories and maintained the schedule of a six-years. Def.'s Reply, Exh. 1 at 4. Maintaining this designation does not demonstrably contradict a contract term of ten years as the schedule could be amended in the future to account for the ten-year contract.

The alleged error was neither typographical nor clerical. Typographical errors encompass transcription such as "a court reporter in transcribing a trial transcript." *Westgate at Williamsburg Condo. Ass'n, Inc. v. Philip Richardson Co.*, 270 Va. 566, 578 (2005). (citing *Zhou v. Zhou, 38 Va.App. 126, 133, 562 S.E.2d 336, 339* (2002)). Further, the Virginia Supreme Court noted that characterizing "the signing of the order by the trial judge, and by counsel for both parties, as an "oversight" or an "inadvertent error" is inconsistent with the affirmative acts of the trial court and counsel." *Morgan v. Russrand Triangle Assocs.*, 270 Va. 21, 26, 613 S.E.2d 589, 591 (2005). In *Wellmore Coal*, the Virginia Supreme Court held that an attorney's failure to timely sign a document before submitting it to the court did not constitute a clerical error. 264 Va. at 283, 568 S.E.2d at 673. Similarly, here the purported oversight in the Acknowledgement changing Road King's 2014 AD Agreement's term to ten years was not a clerical error. This document was reviewed and executed by both parties so the fact that a party's intent was not fully reflected cannot be attributed to an error of the scrivener. *See Westgate at*

*Williamsburg Condo. Ass'n, Inc. v. Philip Richardson Co.*, 270 Va. 566, 578 (2005).  Here, the same as in *Westgate*, the error lies with the party's inattention to the detail in reviewing the document before them. *Id.*

The Court does not need to address the extrinsic evidence presented by both parties because scriveners' errors are defined as those evidenced in the writing that can be proven without parole evidence. *Id.* Further, it "is universally accepted that parole or extrinsic evidence will be excluded when offered to add to, subtract from, vary or contradict the terms of a written contract." *High Knob, Inc. v. Allen*, 205 Va. 503, 506, 138 S.E.2d 49 (1964). Therefore, the Acknowledgement clearly states that the term of the new AD Agreement would also be for a ten-year term and constituted a valid amendment as it was a written document signed by an authorized representative of each party in conformity with §8.13 of Road King's 2014 AD Agreement.

### 2. Breach of the Obligation

Now, the Court turns to Road King's termination argument. The contract provides for both termination with cause and termination without cause. *See* Road King's 2014 AD Agreement, at §§7.3(b), (c). Liberty can terminate Road King with cause for enumerated instances and without an opportunity to cure. *Id.* at §7.3(b). Liberty can only terminate without cause if Road King fails to perform an obligation under the contract and this failure continues for thirty days after Liberty sends a written notice of such breach to Road King. *Id.* at § 7.3(c). Liberty's November 23, 2020 letter to Road King stated: "As you know, the [2014 AD Agreement] expired on November 18 2020. This is to notify you that, due to your failure to meet the development goals as set forth in the Area Developer Agreement, Liberty will not renew the Area Developer Agreement." Def.'s Mem. Opp'n., at ¶ 61. Thus, Liberty's stated basis for terminating Road King was its "failure to meet the development goals." *Id.* The failure to meet development goals is not listed as a specific reason for which Liberty may terminate Road King without opportunity to cure. Road King's 2014 AD Agreement, §7.3(b). Liberty did not provide a notice letter to Road King before November 23, 2020 related to its failures to meet

the terms and conditions of the contract. Pls' Amend. Mem. Supp. at ¶ 69; Def.'s Mem. Opp'n., at ¶ 69. Thus, Liberty did not conform with the contractual requirements for terminating Road King without cause.

Accordingly, Liberty breached a legally enforceable obligation by improperly terminating Road King on November 18, 2020 because Road King's 2014 AD Agreement did not expire until November 2024. In sum, the Court finds that Road King is entitled to judgment as a matter of law on Count One with regard to Plaintiffs' wrongful termination claim as to Road King. Accordingly, Defendant's Motion for Summary Judgment is **DENIED** as to Count One. Plaintiffs' Amended Motion for Partial Summary Judgment is **GRANTED** as to Count One.

## B.   Count Two: Breach of Contract- Failure to Pay Franchise Royalties as to Road King and ZeeDee

As mentioned, to succeed on a breach of contract claim at trial, Plaintiffs must establish: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *Sunrise*, 277 Va. at 154; *Filak*, 267 Va. at 619. Under Virginia law, where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. *TM Delmarva*, 263 Va. at 119. However, a contractual provision is not ambiguous merely because the parties disagree as to the provision's meaning. *Id.* Any ambiguity that arises in the contractual language is construed against the drafter. *Doctors Co.*, 285 Va. at 573.

Plaintiffs allege that Liberty breached both ZeeDee and Road King's AD Agreements by failing to pay Plaintiffs "the full share of royalties and fees owed to Plaintiffs, specifically, their portion of the e-filing fees charged by Liberty Tax to the Franchisees, by the deadline stated in paragraph 3.10." SAC, at ¶ 59. E-filing fees are a service offered by Liberty. Pls' Mem. Opp'n, at ¶ 45. Franchisees were given the opportunity to "opt into" an e-file fee program in which Liberty charged an e-file fee and rebated a portion back to franchisees. Def.'s Mem. Opp'n, at ¶ 28. The Franchise

Agreement addresses such fees in Section 4(m) stating, "Liberty reserves the right to impose a fee charged to you or your customers related to . . . the electronic filing of tax returns and, if charged to customers, may rebate a portion of the fee to you." *Id.* at ¶ 28; Pl.s' Amend. Reply at ¶ 28-33.[4] These fees are "not included in [sic] Gross Receipts." Franchise Agreement, at §4(m).

There is no dispute in material fact as the plain language of the AD Agreements state that the share of the royalties owed to Plaintiffs are pursuant to the terms in the franchise agreements between the Franchisee and Liberty and the franchise agreements exclude e-filing fees from royalties. *See* Road King's 2014 AD Agreement at §3.2; ZeeDee's 2015 AD Agreement, at §3.2 (stating that royalties are "pursuant to the terms in the franchise agreement between Franchisee and Liberty ("Franchise Fees and Royalties").") The franchise agreements define "Royalties" as "14% of Gross Receipts," subject to certain annual minimums. Franchise Agreement, at §4(d). "Gross Receipts" are, in turn, defined in the franchise agreements as "all revenue from all services and products offered by the franchised business (including, but not limited to, revenue from individual, corporate, estate and partnership tax returns) after approved deductions for customer discounts/refunds, send a friends and cash in a flash." *Id.* at §2(c).

The franchise agreements make clear that E-Filing Fees are not included in Gross Receipts as follows:

> m. **Transmitter, Software, or Electronic Filing Fee.** Liberty reserves the right to impose a fee charged to you or your customers related to transmission of Financial Products, the provision of software, or the electronic filing of tax returns and, if charged to customers, may rebate a portion of the fee to you. Liberty may vary the dollar amount of the fee and may change its name. Any such fee is not included in your Gross Receipts.

Franchise Agreement, at §4(m); Def.'s Mem. Opp'n, at ¶ 30.

There is no dispute in material fact as the plain language of the contract states that royalties are pursuant to the terms in the franchise agreements between the Franchisee and Liberty and the text of

---

[4] Plaintiffs do not dispute the terms of the Franchise Agreement. Pl.s' Amend. Reply at ¶ 28-33.

the franchise agreements exclude e-filing fees from royalties. Since E-Filing Fees are not included in Gross Receipts they are not subject to Royalties under the AD agreements.

Plaintiffs' argument that the term "royalties" is undefined in the AD Agreements making the term ambiguous regarding whether "e-file fees" would fall within royalties proves unavailing as royalties are defined in the AD Agreements "pursuant to the terms in the franchise agreement between Franchisee and Liberty ("Franchise Fees and Royalties")". Road King's 2014 AD Agreement, at §3.2; ZeeDee's 2015 AD Agreement, at §3.2. Moreover, Plaintiffs argument strains to make a distinction between "Royalties" and "ongoing Royalties." Pl.s' Amend. Mem. Supp., at 24. However, Section 3.2 defines "Franchise Fees" and "Royalties" in the body of Section 3.2 and continues to use the capitalized, defined terms in the body of Section 3.3. Road King's 2014 AD Agreement, at §§3.2 and 3.3; ZeeDee's 2015 AD Agreement, at §§3.2 and 3.3. Plaintiffs' interpretation strains the plain meaning of the AD Agreements.

Accordingly, royalties are defined in Section 3.2 of the AD Agreements by incorporating the Franchise Agreements and e-filing fees are not included in the definition of royalties in the Franchise Agreements. The Court therefore finds that Plaintiffs have failed to establish a prima facie case of breach of contract for failure to pay franchise royalties and Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Count Two.

## C. Count Three: Breach of Contract- Wrongful Termination as to ZeeDee

The Court "construe[s] the contract as a whole" when ascertaining the meaning of any portion or provision of a contract, such as those situations where parties dispute the meaning of a term or phrase. *Doctors Co.*, 285 Va. at 572; *Am. Spirit*, 261 Va. at 275. An agreement "complete on its face" and plain and unambiguous in its terms precludes the need for any search beyond the instrument itself in construing the contract. *Ross*, 231 Va. at 212. Any ambiguity that arises in the contractual language is construed against the drafter. *Doctors Co.*, 285 Va. at 573. However, a contractual provision is not

ambiguous merely because the parties disagree as to the provision's meaning. *TM Delmarva*, 263 Va. at 119 (2002) (citing *Ross*, 231 Va. at 212-13). Further, Virginia law presumes parties do not include meaningless contract provisions. *Ross*, 231 Va. at 214; *D.C. McClain*, 249 Va. at 135-36. Therefore, no word or clause will be treated as meaningless so long as a reasonable meaning can be attributed to it. *Berry*, 225 Va. at 208; *Winn*, 227 Va. at 307.

ZeeDee's breach of contract claim in Count Three alleges that Liberty breached the AD Agreement by failing to renew the agreement on the same terms. SAC, at ¶¶ 61-72. Moreover, ZeeDee offers "three pathways" to renewal, splicing the language of Section 7.2 to extract distinctions between "this Agreement," "new Agreement," and "future Agreements." Pl.s' Amend. Mem. Supp., at 15-21.

This Court cannot accept the same strained interpretation of Section 7.2 rejected in *Robinson v. JTH Tax LLC d/b/a Liberty Tax Serv.*, No. 2:21-cv-00066-AWA-DEM (E.D. Va. Aug. 26, 2022). When "considering the meaning of any part of a contract, [courts] will construe the contract as a whole, striving not to place emphasis on isolated terms wrenched from the larger contractual context." *Babcock & Wilcox Co. v. Areva NP, Inc.*, 292 Va. 165, 179–80 (2016) (internal citations and quotation marks omitted). Section 7.2 of the AD agreement is one integrated paragraph for renewal. ZeeDee urges this Court to pick apart a provision of the contract to place emphasis on 'new,' 'this,' and 'future' in order to conclude that ZeeDee met the condition precedent for renewal of 'this' agreement. Pl.s' Amend. Mem. Supp., at 15-21. When delineating different pathways, other portions of the AD Agreements split out those pathways into different sections. *See* ZeeDee's 2015 AD Agreement §7.3. The termination section delineates separate pathways for termination. *Id*. However, the renewal provision is one integrated paragraph, which should be read as a whole. The terms of Section 7.2 plainly require compliance with the AD Agreement, timely written notice of renewal, and an execution of a general release as conditions precedent for renewal. ZeeDee's 2015 AD Agreement §7.2. Accordingly, the Court rejects Plaintiff's strained interpretation of the contract.

The plain language of Section 7.2 of the AD Agreement gave ZeeDee an opportunity to enter into a new agreement with Liberty for the provision of similar services if ZeeDee: (a) was in compliance with the AD agreement; (b) gave 180 days written notice in accordance with the notice provision; and (c) executed a general release. *Id*. Here, undisputed facts establish that ZeeDee did not comply with the "Minimum Requirements" in Section 4.1 and Schedule B. Def.'s Mem. Supp., at ¶ 50; Pl.s' Mem. Opp'n, at ¶¶ 50-53. Further, undisputed facts establish that ZeeDee did not give proper notice as required by Section 8.10. Def.'s Mem. Supp., at ¶¶ 71-74; Pl.s' Mem. Opp'n, at ¶¶ 71-73.

**1. Compliance with the AD Agreement**

Undisputed facts establish that ZeeDee did not comply with the "Minimum Requirements" in Section 4.1 and Schedule B. Def.'s Mem. Supp., at ¶ 50; Pl.s' Mem. Opp'n, at ¶¶ 50-53. First, Plaintiffs argue that ZeeDee was in compliance with the applicable "terms and conditions" of the AD Agreement because the parties intentionally excluded the Minimum Requirements from being included in terms and conditions. Pl.s' Amend. Mem. Supp., at 20; Pl.s' Amend. Reply. At 17; Pl.s' Mot. Opp'n. at 18. Section 4.1 states that "deletion is Liberty's sole remedy for failure to meet Minimum Requirements." Pl.s' Amend. Mem. Supp., at 20. Second, ZeeDee further argues that Section 7.2 states the failure to meet the Minimum Requirements in Section 4.1 results only in the reduction of a Territory indicates. *Id*. Section 7.2 states in relevant part: "The fees and percentages described in Sections 3.2 and 3.3 above will not be reduced upon any renewal nor will the Territory be reduced, except as may be reduced due to failure to meet Minimum Requirements, as described in Section 4.1 above." ZeeDee's 2015 AD Agreement §7.2. Thus, ZeeDee argues that Section 7.2 and Section 4.1 preclude the "failure to meet Minimum Requirements" from being a term or condition for renewal. Pl.s' Amend. Mem. Supp., at 21.

ZeeDee's reading of the contract would require the Court to read out the Section 7.2 clause stating that Liberty will provide the right to a new agreement "provided [the] Area Developer is in compliance with the terms and conditions in this Agreement." ZeeDee's 2015 AD Agreement §7.2.

The plain meaning of Section 7.2 is that compliance with the contract's terms and conditions is prerequisite for renewal. *Id.* Meeting minimum requirements is a term in the contract. ZeeDee's 2015 AD Agreement §4.1. The only reading of the Section 4.1, which does not contradict or constructively amend Section 7.2, is Section 4.1 that explains Liberty's in-term remedies for ZeeDee's failure to meet the minimum requirements. By its own terms, Section 4.1 empowered Liberty to delete portions of ZeeDee's territory as described by the AD Agreement. *Id.* Nothing in Section 4.1 expressly or implicitly touches upon Liberty's decision to renew the agreement. Therefore, Liberty could exercise this remedy each year during the term of the AD Agreement.

Although Section 7.2 references Section 4.1, that reference is limited to Liberty's ability to reduce ZeeDee's territory upon renewal and it does not imply or mandate that Liberty had to renew ZeeDee's AD Agreement. The last sentence of Section 7.2 simply states that upon renewal, territory could not be altered "except as may be reduced due to failure to meet Minimum Requirements, as described in Section 4.1." *Id.* at §7.2. This sentence does not indicate that failure to meet the minimum requirements could not be a basis for denying renewal. It clarifies that territory upon renewal is the same unless previously reduced under the terms of the AD Agreement. Meeting Minimum Requirements are still a term in the AD Agreement.

ZeeDee argues that Liberty communicated an intent to make AD Agreements perpetual through the renewal provision. Pls.' Amend. Mem. Supp., at 26-27. As stated above the Court need not address extrinsic evidence when the face of the contract is unambiguous. *High Knob, Inc. v. Allen*, 205 Va. 503, 506, 138 S.E.2d 49 (1964). However, the interpretation ZeeDee proffers ignores entire sections of the contract including, Section 7.1, which states the term of the contract, Section 6.1, which states post-term non-compete obligations, Section 6.2, which states post-term no solicitation obligation, Section 7.3, which states options for termination, and Section 7.2, which states the conditions for potential renewal. *See* ZeeDee's 2015 AD Agreement. Clear terms of the contract

expressing options for termination, potential renewal, and obligation of the parties after the contract expires show that this contract could end and was not meant to live in perpetuity.

Accordingly, ZeeDee's 2015 AD Agreement conditions any right to renewal on compliance with the AD Agreement's terms and conditions. It is undisputed that ZeeDee failed to meet the minimum requirements set forth in Schedule B. This means that Liberty could refuse renewal.

### 2. Notice Requirement

Undisputed facts establish that ZeeDee did not give proper notice as required by Section 8.10. The AD Agreement requires notice "must be made in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally, to Liberty's CEO." ZeeDee's 2015 AD Agreement §8.10. On June 23, 2020, ZeeDee sent a message to Liberty regarding its intent to renew. Pl.s' Amend. Mem. Supp., at ¶ 57; Def.'s Mem. Opp'n, at ¶ 57. ZeeDee sent the message through Liberty's Issue Tracker system and did not address anyone in particular at Liberty. Pl.s' Amend. Mem. Supp., at Ex. 5. The message, addressed to no one, stated, "I'm approaching the 6 month point before my AD Agreement expires. *Id.* Thus, I am asking that you begin the process of renewing the AD Agreement for AD 8041.". Through the portal Liberty replied that it would "start working on [its] AD renewal." *Id.* This message was sent by Andrea Foran, a Liberty regional support coordinator. *Id.*; Def.'s Mem. Supp., at ¶ 67. ZeeDee did not send notice "in writing and shall be given by mail or courier, postage fully prepaid, or delivered personally, to Liberty's CEO" as required by Section 8.10. ZeeDee's 2015 AD Agreement, §8.10.

ZeeDee argues that Andrea Foran's reply through the portal that Liberty would "start working on [its] AD renewal" constituted a waiver of the notice requirement. Pl.s' Amend. Reply, at 15-17. However, Section 8.13 states that waiver will only be effective "in a written document that is signed by an authorized representative of each party." ZeeDee's 2015 AD Agreement, §8.10.

Under Virginia law, "[w]aiver is an intentional relinquishment of a known right." *Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 74 (1983). "A waiver must be express, or, if it is to be implied,

it must be established by clear and convincing evidence." *Pysell v. Keck*, 263 Va. 457, 460 (2002). "[T]he party relying on a waiver has the burden to prove the essentials of the waiver by clear, precise and unequivocal evidence' and 'waiver of a legal right will be implied only upon clear and unmistakable proof of the intention to waive such right." *Baumann v. Capozio*, 269 Va. 356, 361 (2005). "The Virginia Supreme Court has defined clear and convincing evidence as the degree of proof that provides the fact finder a firm belief of conviction regarding the allegations that a party seeks to establish." *Sharp v. Sharp*, No. 02-74, 2006 WL 3088067, at *10 (City of Portsmouth Cir. Ct. Oct. 26, 2006) (*citing Grubb v. Grubb*, 272 Va. 45, 54, 630 S.E.2d 746 (2006)).

Here, ZeeDee fails to establish an express waiver of the notice requirement under Virginia law. ZeeDee's 2015 AD Agreement states, "[n]o amendment, change, or modification of this Agreement and no waiver of any right under this Agreement will be effective unless in a written document that is signed by an authorized representative of each party." ZeeDee's 2015 AD Agreement, § 8.13. ZeeDee argues that by agreeing to proceed with the renewal in these messages, the parties expressly waived the notice requirement. Pl.s' Amend. Reply at 16. To support this notion, ZeeDee argues that the message in the system satisfied the notice requirement because "these notices of request to renew made their way to Liberty Tax's CEO, Brent Turner, for evaluation." Pl.s' Amend. Mem. Supp., at 19. However, these messages were not signed by the CEO. Pl.s' Amend. Mem. Supp., at Ex. 5. The messages through Liberty's system do not constitute an intentional relinquishment of a known right by an authorized representative of Liberty. ZeeDee's 2015 AD Agreement was signed by the CEO of Liberty, not Andrea Foran. There is no evidence that Liberty held out Andrea Foran as having authority to bind Liberty or waive Liberty's contractual rights. Further, ZeeDee does not argue that Andrea Foran had apparent authority to waive Liberty's notice requirement. ZeeDee fails to establish conformity with the notice requirement and further fails to establish that Liberty waived the notice requirement.

Accordingly, the renewal provision in Section 7.2 of the AD agreements did not require Liberty to renew the AD agreement because ZeeDee did not meet the conditions precedent for renewal. Thus,

22

the Court finds that Plaintiff has failed to meet his burden of establishing a prima facie breach of contract claim for wrongful termination as to ZeeDee. Defendant is therefore entitled to judgment as a matter of law, and, accordingly, Defendant's Motion for Summary Judgment is **GRANTED** as to Count Three.

### IV.    CONCLUSION

For the foregoing reasons, the Court **FINDS** Road King is entitled to judgment as a matter of law on Count One. Further, the Court **FINDS** JTH Tax, LLC d/b/a Liberty Tax Service is entitled to judgment as a matter of law on Counts Two and Three. Accordingly, Defendant's Motion for Summary Judgment is **GRANTED in part and DENIED in part**. Additionally, for the reasons above Plaintiffs' Amended Partial Motion for Summary Judgment is **GRANTED in part and DENIED in part**.

The Clerk is **DIRECTED** to provide a copy of this Order to counsel for all parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
February *17*  , 2023

Raymond A. Jackson
United States District Judge